## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **MIDSHIP PIPELINE COMPANY, LLC,** | § | |
| | § | |
| *Plaintiff*, | § | **Case Number: 6:18-cv-302-RAW** |
| | § | |
| **vs.** | § | **Judge: Ronald A. White** |
| | § | |
| **TRACT NO. BR-0860.000, 2.331** | § | |
| **ACRES OF LAND, MORE OR LESS,** | § | |
| **PERMANENT EASEMENT** | § | |
| **(PIPELINE RIGHT OF WAY) IN** | § | |
| **BRYAN COUNTY, OKLAHOMA,** *et* | § | |
| *al.*, | § | |
| *Defendants*. | § | |

## COMMISSION REPORT, RECOMMENDATIONS, AND DETERMINATION OF JUST COMPENSATION

Plaintiff Midship Pipeline Company, LLC ("Midship") filed this action pursuant to the Natural Gas Act, 15 U.S.C. §§ 717a-z to obtain an order of condemnation against properties owned by defendants in Bryan, Carter, and Johnston Counties, Oklahoma, to acquire easements necessary for the construction and operation of a 36-inch natural gas pipeline as authorized by the Federal Energy Regulatory Commission ("FERC"), in the interest of public convenience and necessity ("Pipeline"). The Court granted Midship possession of the easements sought in this case and, pursuant to Federal Rule of Civil Procedure 71.1, appointed a Commission to "to assist the Court in determining the compensation owed" *Order and Instructions for Commission*, at 2 (Doc. No. 796).

Having carefully considered all of the evidence and arguments offered by the parties, the Commission now unanimously **RECOMMENDS** the Court order Midship to pay out of the funds deposited with the Court Clerk total just compensation for the taking of permanent easements, use of temporary easements for 24 months, and damages to the remainder, if any, to the Landowners, including any heirs, successors and assigns of the named defendants, and any unknown owners of the below-named tracts, in the following amounts:

**TABLE A**

| Tract(s) No(s). | Remaining Defendant(s) Landowner(s) | Amount of Just Compensation Recommended |
|---|---|---|
| **BR-0893.000** | Hazel C. Haggerty, as Personal Representative of the estate of Don M. Haggerty, and Irish Venture Trust, Hazel C. Haggerty Trustee, or a Successor Trustee | **$26,500.00** |
| **BR-0894.000** | Hazel C. Haggerty, as Personal Representative of the estate of Don M. Haggerty, and Irish Venture Trust, Hazel C. Haggerty Trustee, or a Successor Trustee | **$500.00** |
| **CR-0473.010** | The executor, executrix and, or administrator of Estate of Margaret A. Taylor, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Estate of Margaret A. Taylor, deceased, *et al* | **$500.00** |
| **CR-0473.020** | Shirley A. Jones, *et al* | **$1,277.00** |
| **CR-0473.000** | Gene Davis, *et al* | **$1,444.72** |
| **CR-0472.000** | The executrix and, or administrator of the Estate of W. D. Austin, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of W. D. Austin, deceased, *et al* | **$4,218.48** |
| **CR-0480.010** | Virginia Johnson, whether alive or deceased, and, if deceased, the executor, executrix and, or | **$813.00** |

2

| | | |
|---|---|---|
| | administrator of the Estate of Virginia Johnson, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Virginia Johnson, deceased | |
| **CR-0482.000** | Seretta Joyce Gaines, *et al* | **$1,673.00** |
| **CR-0483.000** | Rosie Petties, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Rosie Petties, deceased, and all heirs and legatees, devisees, trustees, creditors and assigns of Rosie Petties, deceased, or her known or unknown heirs, executors, administrators, legatees, devisees, trustees, creditors, and assigns, *et al* | **$813.00** |
| **CR-0517.010** | The executor, executrix and, or administrator of the Estate of Kate Rogene Lawrence Staggs, deceased, and all heirs and legatees, devisees, trustees, creditors and assigns of Kate Rogene Lawrence Staggs, deceased, *et al* | **$3,006.00** |
| **CR-0711.000** | The executor, executrix and, or administrator of the Estate of Mamie Hutchins, decease, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Mamie Hutchins, deceased | **$500.00** |
| **CR-0484.000** | Lule H. Pettus, a/k/a Lula H. Pettus, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Lule H. Pettus a/k/a Lula H. Pettus, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Lule H. Pettus, a/k/a Lula H. Pettus, deceased, *et al* | **$500.00** |
| **CR-0484.010** | The executor, executrix and, or administrator of the Estate of Janet McAfee Ayres, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Janet McAfee Ayres, deceased | **$500.00** |

| | | |
|---|---|---|
| **CR-0484.020** | The executor, executrix and, or administrator of the Estate of Anna Mae Cato, nee Pettus, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Anna Mae Cato, nee Pettus, deceased, *et al* | **$47.00** |
| **CR-0485.000** | The executor, executrix and, or administrator of the Estate of Lawrence Pettus, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Lawrence Pettus, deceased, *et al* | **$4.00** |
| **CR-0486.020** | The executrix and, or administrator of the Estate of Devola Langetta Pennon, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Devola Langetta Pennon, deceased, *et al* | **$46.00** |
| **CR-0494.000** | Rosie Breath, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Rosie Breath, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Rosie Breath, deceased, *et al* | **$900.00** |
| **CR-0497.000** | The Estate of Charlene Breath, the executor, or executrix or administrator of the Estate of Charlene Breath, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Charlene Breath, *et al* | **$1,104.00** |
| **CR-0499.000** | The Unknown Heirs of Clara R. Pettis, deceased, The Unknown Heirs of Buel Pettus, Sr., deceased, *et al* | **$3,943.00** |
| **CR-0501.000** | J. T. Phillips, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of J. T. Phillips, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of J. T. Phillips, deceased | **$454.00** |

4

| | | |
|---|---|---|
| **CR-0502.000 and CR-0503.000** | Gerlene Miller as Personal Representative of the estates of Isaak Franklin and Annie B. Franklin | **$4,762.00** |
| **CR-0693.000** | The executor, executrix and, or administrator of the Estate of Fred O. Lofton, Sr., deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Fred O. Lofton, Sr., deceased, *et al* | **$7,550.00** |
| **CR-0700.000** | The executor, executrix and, or administrator of the Estate of Fred Lofton, Jr., deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Fred Lofton, Jr., deceased, *et al* | **$3,300.00** |
| **CR-0626.000** | Larry D. Smith and Barbara J. Smith | **$7,250.00** |
| **CR-0627.000, CR-0628.000 and CR-0629.000** | Casey B. Smith and Kristy J. Smith | **$11,413.00** |
| **CR-0636.000** | H&H 1313, Inc. | **$1,240.00** |
| **CR-0701.000** | Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Warren H. Herriott, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Warren H. Herriott, deceased; Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Sammie J. Herriott, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Sammie J. Herriott, deceased | **$3,500.00** |
| **CR-0703.000 and CR-0709.000** | Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Warren H. Herriott, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Warren H. Herriott, deceased; Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of | **$13,000.00** |

5

| | Sammie J. Herriott, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Sammie J. Herriott, deceased | |
|---|---|---|
| **CR-0701.010** | Lois J. Lofton Revocable Trust dated August 1, 1997, Lois J. Lofton, Trustee; Brenda J. Lofton | **$317.00** |
| **CR-0704.000** | Estate of Levi Birt, Jr., deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Levi Birt, Jr., deceased, *et al* | **$2,318.00** |
| **BR-0860.000** | Larry Hughes and Jerry Hughes | **$6,285.00** |
| **BR-0903.000, BR-0904.000 and BR-0905.000** | Misty Hall Murphree, *et al* | **$12,700.00** |
| **BR-0907.000 and BR-0909.000** | Billy Miller | **$16,143.00** |
| **BR-0925.000** | The estate of Donald Andrew Morris, the executor, or executrix or administrator of the Estate of Donald Andrew Morris, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Donald Andrew Morris | **$4,625.00** |
| **BR-0994.000, BR-0995.000 and BR-0996.000** | Henderson G. Anderson and Sherron Katherine Anderson, Co-Trustees of the Anderson Family Revocable Trust under written agreement dated January 21, 2009 | **$6,100.00** |
| **BR-1000.000 and BR-1001.000** | Nolen G. Grounds and Jackie M. Grounds; The executor, executrix and, or administrator of the Estate of Paul Akins, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Paul Akins, deceased; the executor, executrix and, or administrator of the Estate of Clifford Akins, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Clifford Akins, deceased | **$2,760.00** |
| **BR-1002.000** | The William T. Cooley and Frances L. Cooley Survivors Trust, Frances L. Cooley Trustee, *et al* | **$9,335.00** |

| JO-0753.000 and JO-0754.00 | Raymond A. Hulsey; Ranada D. Hulsey | $2,865.00 |
|---|---|---|
| JO-0758.000 | Robert Eugene Harris | $2,384.00 |
| JO-0819.000 | Ralph D. Ragan | $2,448.00 |
| BR-0991.000 and BR-0993.000 | Wayne Caldwell and Donna Caldwell | $1,000.00 |

The Commission's unanimous recommendations are based on the following.

## Introduction and Legal Standards.

This case is a condemnation action brought by Midship to acquire permanent and temporary easements to install, construct, operate and maintain a natural gas pipeline across the defendant landowners' properties. Midship's right to appropriate easements across the properties to be used to construct and operate the pipeline is based upon its receipt of the Certificate of Public Convenience and Necessity ("Certificate") from FERC, pursuant to Section 7 of the Natural Gas Act.

The defendants are the properties crossed by the Pipeline and owners of interests in them, who have not reached agreement with Midship as to the amount of just compensation for the easements sought by Midship.[1] The Commission heard testimony and considered documentary and other evidence and arguments presented and introduced during hearings on September 6-9, 2022, to determine just compensation due to the unsettled landowners.

For purposes of determining just compensation, an easement is a nonpossessory right to enter and use land in the possession of another, and it obligates the possessor not to interfere with the uses authorized by the easement grant for the purpose of a natural gas pipeline approved by

---

[1] The commission granted in part Midship's Motion for Summary Judgment awarding third-parties claiming interest in the properties *sub judice* $0.00 in compensation. *See* Doc. No. 870.

FERC.  An easement does not transfer ownership of the land, it only confers the right to use the land.  The owner still may use the area of the easement for all purposes consistent with the easement.  Midship's easement rights are described in paragraphs 26-47 of Midship's Verified Complaint, as amended.  The easements are further described and depicted in the certified plats attached to Midship's Complaint and exhibits thereto, as amended, and in the Notices of Commencement of Condemnation Action and exhibits thereto, as amended.  *See* Order and Instructions for Commission, Doc. 796 at 12-13.  Generally in this case, the permanent pipeline easements, inside of which the pipeline is constructed, are fifty feet (50') in width ("Permanent Easement(s)").  On a few tracts, Midship also condemned permanent access road easements, as depicted on the Exhibit A to Verified Complaint for Condemnation, as amended.

Midship's Permanent Easements, except for surface sites, are non-exclusive and all are limited in use to the rights expressly provided within Midship's FERC Certificate and set forth in Midship's Verified Complaint for Condemnation, as amended.  Defendant Landowners cannot build structures within the Permanent Easement or impound water within the Permanent Easement, but the Landowners are otherwise permitted to use the Permanent Easements for "for all purposes which do not destroy or interfere with Midship's permitted uses of same * * * including, without limitation, agricultural, open space, setback, density, street, utility and roadway purposes." Complaint at ¶35 (Doc. No. 2).

Midship also used temporary workspace easements, additional temporary workspace easements and temporary access road easements for construction of the Facilities (collectively, temporary workspace, additional temporary workspace easements and temporary access road easements are referred hereinafter as "Temporary Easements").  Temporary Easements have been used for construction and remediation only and will not be used once construction and

remediation is complete.  The exact acreages of the Permanent and Temporary Easements and their locations are set forth on the plats in the exhibits filed by Midship and are not in dispute.  The two-year period for which the Temporary Easements have been condemned has now expired, and the Temporary Easements have reverted back to the landowners.[2]

Rule 71.1 of the Federal Rules of Civil Procedure is very clear that the Commission "is to be confined to the performance of a single narrow but important function – the determination of a compensation award within ground rules established by the trial judge." *United States v. Reynolds*, 397 U.S. 14 (1970).  The Court's Instructions to the Commission make clear that just compensation is comprised of: (1) the fair market value of the easements on each property in question on January 3, 2019 (the date of the taking), plus (2) any injury to the property left remaining after the taking.  Doc. 796 at 13-14.  Any decrease in fair market value to the property or remainder is measured by the difference between the market value of the entire holding immediately before the take and the remaining market value immediately thereafter due to imposition of the easements.  *Id*.; *see also Horne v. Dep't of Agriculture,* 135 S. Ct. 2419, 2423 (2015); *N. Natural Gas Co. v. L.D. Drilling*, 862 F.3d 1221, 1225 (10th Cir. 2017) (valuation is determined from the date of taking for purposes of valuing the relevant property rights).

Midship does not dispute that it is obligated to pay just compensation for the easements taken, as well as for the damage to the remainder, if any.  The amounts recommended as awards of just compensation are in satisfaction of all claims of damage asserted or which could have been asserted by all the defendants with regard to specific tracts in this matter, caused by the imposition of the easements by Midship on January 3, 2019.  The amounts do not include any separate damage

---

[2] On some tracts, landowners may have granted Midship access to Temporary Easements beyond two-year period under seprate agreements for remediation work.

occasioned by negligent construction, if any, of the Pipeline or Facilities (as those terms are defined in Midship's complaint, as amended), or any damage occasioned by failure, if any, of Midship to follow or implement any required remediation plan with respect to the properties which are the subject of this report. The Commission appreciates that any such damages must be the subject of separate proceedings, and it expresses no view regarding claims, if any, of negligent construction or failure to comply with the FERC remediation requirements.

**Discussion and Determinations.**

Midship provided evidence in the form of an expert witness's testimony and in the form of documents, plats, and drawings offered and admitted by the Commission. Midship's expert witness Mr. Walker Kelly ("Kelly"), an Oklahoma-licensed real estate appraiser, testified as to his educational and professional background, requirements to hold a real estate appraiser license in Oklahoma, and his compliance with those requirements as a license holder at all the times relevant to these proceedings. The Commission found Mr. Kelly to be qualified to testify as an expert witness on the issues of appraising real estate and just compensation for the taking in this case.

Mr. Kelly testified regarding the appraisals of each property subject to this Report, methodology of his appraisals, in all of which he appraised the properties and just compensation for the taking as of January 3, 2019, compliance in his appraisals with the Uniform Standards of Professional Appraisal Practice, as well as regarding the documents, materials, literature that informed his conclusions about the value of the properties at issue, damages, if any, to the remainder of the properties caused by the imposition of the Midship's easements, and total just compensation for the taking of the easements.

The documents reviewed by the expert, and offered as exhibits and admitted without objection as evidence by the Commission include (i) the terms of the easements taken as described in the condemnation complaint in this matter, (ii) plats of the easements condemned across each of the properties, (iv) appraisals of each of the properties, including the market values of the parts taken and damages, if any, to the remainders of the properties due to imposition of the easements sought as of the date of the taking on January 3, 2019, (iv) the expert's paired sales study, (v) other studies as to effects of pipelines on property values by INGAA Foundation, Donald Palmer, Julia Hansen, *et al*, Barry Diskin, *et al*, and (vi) FERC's conclusion in Midship's Final Environmental Impact Statement as to a pipeline's effect, if any, on land values.

The Commission outlines below the evidence presented as to the fair market value of the permanent and temporary easements on each property in question on January 3, 2019, plus injury, if any, to the property left remaining after the taking on January 3, 2019, on each property below.  Federal law allows evidence of the highest and best use of the land to be considered in establishing the market value of the land at the date of taking.  *See Olson v. United States*, 292 U.S. 246, 255 (1934).  The existing use of the land at the time of the taking is presumed to be the highest and best use.  *U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6h Cir. 1993).  Mr. Kelly testified that he used a well-established four-prong test -- legally permissible, physically possible, financially feasible and capable of producing the highest net return -- to determine the highest and best use for each property.  The Commission found that the use of this method was proper.

Mr. Kelly further testified that out of three traditional real estate valuation methods he used the sales comparisons approach, because the cost and income, and capitalization

approaches were not applicable in this situation. Having performed a highest and best use analysis of the subject properties before taking, he developed indications of value of the properties using comparable land sales. Mr. Kelly analyzed Whole Properties, the Parts Acquired and the value of the Remainders Before and After the acquisition. Having considered the highest and best use of the Remainder After the acquisition, Mr. Kelly determined the values of the parts taken and damages to the remainder, if any, on the properties at issue resulting from Midship's taking on January 3, 2019. The Commission found and hereby reaffirms that the use of this method was proper. Details of Mr. Mr. Kelly's analysis related to specific properties are outlined below.

Mr. Kelly testified that, with respect to the permanent easement, surface site, and permanent access road easements, only a portion of the total bundle of ownership rights was acquired, because the property owner still retained the ownership and certain use of the areas in question. Based upon the rights being acquired and the physical use of the easements, the appraiser typically estimated the value taken for the pipeline easement at 75% of the fee value; for the surface site - 99% of the fee value, while for the access road - 95% of the fee value.

Regarding the use of the Temporary Easements on all tracts, Mr. Kelly testified that he used a land rental value of 10% per annum of the fee simple value of the lands within the Temporary Easements to determine just compensation for use of temporary easements for a period of two years. The Commission found and reaffirms now that the methodology used by Mr. Kelly to value just compensation for the taking of permanent and temporary easements is sound. Expert's testimony as to methodology of the appraisals, his paired sales studies, and exhibits 1, 5, 6, 8, 9, 10, 11, and 12, which were introduced and admitted during his testimony with regard to Tracts No. BR-0893.000 and BR-0894.000, and reintroduced during his

12

testimony in hearings on Tract CR-0484.000, were reincorporated into Mr. Kelly's testimony and readmitted for every other tract for which the hearings were held in this case during September 6-9, 2022.

The Commission credited Mr. Kelly's testimony that he did not value the crops separately, but that his concluded values of the parts taken included all trees and crops thereon, and that their concluded values of the temporary easements included all trees and crops thereon during his two-year valuation period.

The above testimony applies to all the tracts subject of this Report, unless otherwise noted regarding a specific property. The Commission further finds regarding specific tracts, and now recommends as follows:

## **Tract BR-0893.000**

***Named Defendants-landowners: Hazel C. Haggerty, as Personal Representative of the Estate of Don M. Haggerty, and Irish Venture Trust, Hazel C. Haggerty Trustee, or a Successor Trustee.*** Attorney Joe Bocock represents the owners of the property at issue in this hearing. Attorney Bocock expressed his dissatisfaction that a jury trial was not allowed in this case and that the process herein has been reduced to something akin to an administrative proceeding.

Without objections tract-specific exhibits were admitted in addition to the exhibits common to all the tracts. Mr. Kelly testified that he observed this property from the public roadway. The total size of the property is 546.1 acres, irregular-shaped, used mostly as pastureland. The permanent pipeline easement is approximately 5,734.42-foot long, 50-foot wide and comprises about 6.582 acres. Temporary Easements on this property comprise 6.675 acres. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible,

physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach, and having made qualitative adjustments to his six comparable sales, Mr. Kelly concluded that the indicated market value per acre was $2,000, with the value of the whole property before taking being $ 1,092,200. Mr. Kelly testified regarding the weight he afforded various comparable sales in arriving to that valuation. He further testified that he did not automatically assign 8-10% increases based just on the year of comparable sale, but also considered other factors regarding each sale.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $9,873.00. Using a two-step analysis, Mr. Kelly determined the value of the remainder before the acquisition to be $1,082,327.00. Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months was $12,543.00. Mr. Kelly further testified that he assigned partial damages of 75% totaling $1,910.00 to 3.82 acres of the remainder between the existing pipeline and Midship's permanent easement based on the perceived more difficult use of those small areas because of irregular shapes. Mr. Kelly concluded the value of the remainder to be $1,074,687.00 after the taking on January 3, 2019. In response to questions on cross-examination, Mr. Kelly testified that he did not do comparison of sales based on the size of the permanent easement.

Considering compensation for the easements taken and partial damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months was $20,183.00. He further testified

that he deemed his valuation appropriate and fair, but he would understand if others may have slightly higher opinion of value. No closing statements were offered by the parties.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract BR-0893.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $26,500.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, and partial damage to the remaining property.

## Tract No. BR-0894.000

*Named Defendants-landowners: Irish Venture Trust, Hazel C. Haggerty Trustee, or a Successor Trustee.* Attorney Joe Bocock represents the owners of the property at issue in this hearing. Attorney Bocock expressed his dissatisfaction that a jury trial was not allowed in this case and that the process herein has been reduced to something akin to an administrative proceeding.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly testified that he physically observed this property from the public roadway during his two visits to the property. The property is currently used mostly as a pastureland. The total size of the property is 86.72 acres, the permanent pipeline easement is approximately 40.55-foot long, 50-foot wide and comprises about 0.047 acres; Temporary Easement on this property comprises 0.047 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and

15

having made qualitative adjustments to his six comparable sales ranging in value from $2,320 to $3,400 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,400.00, with the value of the whole property before taking being $208,128.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $85.00. Using a 10% rental value, Mr. Kelly concluded that just compensation for use of temporary workspace for two years was $23.00.

Using a two-step analysis, with the value of the remainder before the acquisition being $208,043.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $208,043.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $108.00. Closing statements were declined.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract BR-0894.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $500.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.  CR-0473.010

***Named Defendants-landowners: The executor, executrix and, or administrator of Estate of Margaret A. Taylor, deceased, and all heirs and legatees, devisees, trustees, creditors and assigns of Estate of Margaret A. Taylor, deceased, et al.***    Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials used to appraise the properties

at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference.  Mr. Kelly further testified that he observed this property from the public roadway.  The property is currently vacant.  It is in the floodplain.  The total size of the property is 9.7 acres, the permanent pipeline easement is approximately 250.46-foot long, 50-foot wide and comprises about 0.287 acres; Temporary Easements on this property comprise 0.356 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios.  He did consider a rural residential use as well, but the floodplain factor was not conducive to make that conclusion.  Mr. Kelly further testified that he could not agree that $2,700 per acre would be a correct value based on the property's location in the floodplain.

Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,778 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,600, with the value of the whole property before taking being $15,520.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $345.00.  Using a two-step analysis, with the value of the remainder before the acquisition being $15,175 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $15,175 after the taking on January 3, 2019.  Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary work

17

space for 24 months with no diminution amount due with respect to the remaining property was $459.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0473.010 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $500.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

## **Tract No.   CR-0473.020**

*Named Defendants-landowners: The Estate of Cecil Jones, Shirley A. Jones, Kimberly D. Burks, Houston O. Jones, Gerald W. Jones, Quincy Jones, Shelia Y. Jones, Cleta Jones, et al.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference.  The property is currently unimproved.  The total size of the property is 9.4 acres, the permanent pipeline easement is approximately 652.64-foot long, 50-foot wide and comprises about 0.749 acres; Temporary Easements on this property comprise 0.883 acres.  This property is immediately south of the previously adjudicated tract, and also is 100% in the floodplain.  The Commission credited Mr. Kelly's testimony that, using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios.

18

Utilizing the sales comparison approach, and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,778 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,600.00, with the value of the whole property before taking being $15,040. Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $899.00, and the use of temporary workspace for two years at $283.00.

Using a two-step analysis, with the value of the remainder before the acquisition being $14,141.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $14,141.00 after the taking on January 3, 2019. Mr. Kelly, responding to the commissioners' questions testified that he did not give consider a portion of the tract to be "orphaned" and constituting diminution to the remainder because of that portion being 100% flood-prone and because that portion still retained road frontage.

Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary work space for 24 months with no diminution amount due with respect to the remaining property was $1,182.00. The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0473.020 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $1,277.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0473.000

*Named Defendants-landowners: the Estate of Oscar Davis, the Estate of Severn Davis, et al.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on BR-0893.000 and BR-0894.000 was incorporated by reference. The total size of the property is 141 acres, the permanent pipeline easement is approximately 711.37-foot long, 50-foot wide and comprises about 0.817 acres; Temporary Easements on this property comprise 0.829 acres. The property does not have an extensive road frontage. Half of the property is in pastureland, and the other half is wooded acreage, with about 10% of the property lying in the floodplain. A few oil or gas wells, along with the related lease roads, are encumbering the property.

The Commission agreed with Mr. Kelly's conclusion that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. The Commission further credited his testimony that utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,395.00 to $2,500.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,700.00, with the value of the whole property before taking being $239,700.

Responding to the Commission's questions Mr. Kelly testified that his higher valuation as compared to the adjacent tracts considered in the previous hearings is due to the size of this property, which enhances it with more utility. He further testified that his highest comparable sale was a part of an assemblage, so it included a premium paid on top of the listing price of $1750 per acre. Some of the higher priced sales in his comparable sales were for smaller properties, which usually bring a higher per acre value. He further testified that, in this particular area, the market did not show significant appreciation in value with time. Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent

pipeline easement at $1,042.00, and the use of temporary workspace for two years, based on 10% rental value, at $282.00.

Using a two-step analysis, with the value of the remainder before the acquisition being $238,658.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $238,658.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $1,324.00. In response to the Commission's questions, Mr. Kelly testified that, if he were to use a $1,855 an acre price, the compensation amount would be $1,444.72, and that would be on the higher end of the scale for this property.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0473.000 to be persuasive and recommends an award of $1,444.72 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0472.000

*Named Defendants-landowners: the Estate of W. D. Austin, the Estate of Bernice Curlie Powell, et al.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference.

Mr. Kelly further testified that he observed this property from the public roadway. The property consists of about 40% improved pastureland and 60% woodland; it is bisected by a creek, with about 85% of the property being in the 100-year floodplain. It is encumbered by an existing pipeline. The total size of the property is 156.96 acres, the permanent pipeline easement is approximately 2,015.24-foot long, 50-foot wide and comprises about 2.313 acres; Temporary Easements on this property comprise 2.486 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,395.00 to $2,500.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,750.00, with the value of the whole property before taking being $274,680.00.

Responding to the commissioners' questions, Mr. Kelly testified that he considered that there is a mixture of pastureland and wooded area, his comparable sales reflect that. He did add about 20% premium to his Sale 1 to reflect the fact of a creek frontage.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $3,036.00, and the use of temporary workspace for two years at $870.00. Using a two-step analysis, with the value of the remainder before the acquisition being $271,644.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $271,644.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary work space for 24

months with no diminution amount due with respect to the remaining property was $3,906.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0472.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $4,218.48 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

## Tract No.  CR-0480.010

*Named Defendants-landowners: the Estate of Virginia Johnson.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on BR-0893.000 and BR-0894.000 was incorporated by reference.  Mr. Kelly further testified that he observed this property from the public roadway.  The property is currently vacant.  The total size of the property is 8 acres, it has a stock tank in the center, and is encumbered with a road easement on one side of the property.

The permanent pipeline easement is approximately 352.57-foot long, 50-foot wide and comprises about 0.405 acres.  Temporary Easements, including a temporary access road, on this property comprise 0.737 acres.  Temporary access road was placed on top of the existing Redwood Road.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before"

23

and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400.00 to $2,778.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,800.00, with the value of the whole property before taking being $14,400.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $547.00, and the use of temporary workspace for two years at $266.00. Using a two-step analysis, with the value of the remainder before the acquisition being $13,853.00. Mr. Kelly further testified that there was a mistake in his report, and that he did not find damages to the remainder on this property, and inclusion of that line was a clerical mistake. He opined that the value of the remainder remained $13,853.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary work space for 24 months with no diminution amount due with respect to the remaining property was $813.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0480.010 to be persuasive and recommends an award of $813.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

## **Tract No. CR-0482.000**

*Named Defendants-landowners: Seretta Joyce Gaines, Kenitra Rose Williams, Stewart Murray Gaines, II, Satchel Maurice Gaines.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and

materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference.

Mr. Kelly further testified that he observed this property from the public roadway. The total size of the property is 7.6 acres, the permanent pipeline easement is approximately 387.98-foot long, 50-foot wide and comprises about 0.445 acres. Temporary Easements, including a temporary access road, on this property comprise 0.751 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400.00 to $2,778.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,700.00, with the value of the whole property before taking being $12,920.00. Mr. Kelly further testified that his indicated value is slightly lower than on the previous tract because this property does not contain frontage along a county-maintained road. Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $568.00, and the use of temporary workspace for two years at $258.00.

Using a two-step analysis, with the value of the remainder before the acquisition being $12,352.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $12,352.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $823.00.

25

Responding to the commissioners' questions Mr. Kelly testified that he did not apply any damage to the area northeast of the pipeline because there was still a substantial amount of area between the access road and the pipeline easement available for regular use. Mr. Kelly testified that he could understand if someone considered 0.5 acres as orphaned, although the area is not fenced and the highest and best use of the area has not changed, and nothing would prevent the owners from using that area as before. At the indicated value of $1,700/acre the value of 0.5 acres would be $850.00, with the total compensation of $1,673.00

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0482.000 to be persuasive and recommends an award of $1,673.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.  CR-0483.000

*Named Defendants-landowners: the Estate of Rosie Petties, the Estate of Henryetta Woods, nee Pettus, et al.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference. Mr. Kelly further testified that he observed this property from the public roadway. The total size of the property is 8 acres, the property is vacant. The permanent pipeline easement is approximately 387.99-foot long, 50-foot wide and comprises about 0.445 acres. Temporary Easements including a temporary access road on this property comprise 0.722 acres.

26

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,778 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,700.00, with the value of the whole property before taking being $13,600.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $568.00, and the use of temporary workspace for two years at $245.00. Using a two-step analysis, with the value of the remainder before the acquisition being $13,032.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $13,032.00 after the taking on January 3, 2019. Responding to the commissioners' questions, Mr. Kelly testified that in his opinion, the areas left after the imposition of the easement are large enough and have access to the existing roadway to enable development of a residence on the tract, including a well and septic, should one desire, so there is no diminution in value. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $813.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0483.000 to be persuasive and recommends an award of $813.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

27

### Tract No. CR-0517.010

*Remaining named Defendants-landowners: The executor, executrix and, or administrator of the Estate of Kate Rogene Lawrence Staggs, deceased, and all heirs and legatees, devisees, trustees, creditors and assigns of Kate Rogene Lawrence Staggs, deceased; R. C. Staggs; Doretha J. Wall; William David Lawrence; Ila Lawrence; Travis Osborn; Gary Scott Wall; LaDonna Inman.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference. Mr. Kelly further testified that he observed this property from the public roadway. The total size of the property is 53.49 acres, it was appraised as consisting of two economic units. The permanent pipeline easement is approximately 735.64-foot long, 50-foot wide and comprises about 0.844 acres, all located within the Economic Unit 1. Temporary Easements of 0.844 acres in Economic Unit 1 and 0.746 acres in Economic Unit 2 were used by Midship for twenty-four months.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use for both economic units in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,778 per acre for the Economic Unit 1 and six comparable sales ranging in price from $1,400 to $2,125 per acre for the Economic Unit 2, Mr. Kelly concluded that the indicated market values per acre were $2,200 for the Economic Unit 1 and $2,100 for the

Economic Unit 2, with the value of the whole property before taking - $113,678.00.

Based on the indicated values, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $1,393.00, and the use of temporary workspace for two years at $382.00. Using a two-step analysis, with the value of the remainder before the acquisition being $112,875 and having attributed 75% reduction in value on 0.746 acres because of the limitation in functionality totaling $1,231, Mr. Kelly concluded the value of the remainder to be $111,054.00 after the taking on January 3, 2019. Mr. Kelly further concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with $1,231.00 in compensation for limitation of functionality of 0.746 acres was $3,006.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0517.010 to be persuasive and recommends an award of $3,006.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0711.000

*Remaining Named Defendants-landowners: The executor, executrix and, or administrator of the Estate of Mamie Hutchins, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Mamie Hutchins, deceased.*[3]

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and

---

[3] The commissioners are informed that the Tract CR-0711.000 is a part of a larger property consisting of four tracts including the tract at issue, and that Midship has settled with the title owner in possession of all four tracts and has paid the agreed upon compensation. The remaining named defendant-landowner or her heirs could have a claim to no more than 80 acres of the whole property.

materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference. Mr. Kelly further testified that he appraised all four tracts as one unit. The property of 1,608.19 acres is a mix of native and improved pastureland and irrigated croplands. It is burdened with at least two pipelines and a high-voltage powerline and is about 60% in the 100-year floodplain.

The permanent pipeline easement on this property is approximately 2656.34-foot long, 50-foot wide and comprises about 3.049 acres on this tract and 4.58 acres on all tracts on this Property; Temporary Easements on this tract comprise 4.139 acres and about 7.21 acres on all tracts on this property. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was agricultural in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his comparable sales ranging in value from $2,111 to $3,483 per acre, Mr. Kelly concluded that the indicated market value per acre for the whole property was $3,000, with the value of the whole property before taking being $4,824,570.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement on all four tracts at $10,535.00, and the use of temporary workspace for two years at $4,327. Using a two-step analysis, with the value of the remainder before the acquisition being $4,814,265 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $4,814,265 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly further concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the

remaining property was $14,632.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0711.000 to be persuasive.  The Commission took into consideration the fact that the title owner in possession of the property has granted Midship the easements sought and has been paid in full for the grant of the permanent and temporary easements, and that the remaining named defendant could only potentially claim interest in about 80 acres of land.  The commission, therefore, recommends an award of nominal damages in the amount of $500.00 as the total just compensation for the taking of the said easement, use of the temporary workspace and temporary access road for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0484.000

*Remaining named Defendants-landowners: Lule H. Pettus, a/k/a Lula H. Pettus, whether alive or deceased, and, if deceased, the executor, executrix and, or administrator of the Estate of Lule H. Pettus a/k/a Lula H. Pettus, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Lule H. Pettus, a/k/a Lula H. Pettus, deceased; Eugene Franklin, whether alive or deceased, and, if deceased,  the executor, executrix or administrator of the Estate of Eugene Franklin, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Eugene Franklin, deceased; Carlin Pennon.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000 and BR-0894.000 was incorporated by reference.

The total size of the property is 6.320 acres, it is an irregular tract of land, unimproved as of the date of the appraisal. The permanent pipeline easement is approximately 142.98-foot long, 50-foot wide and comprises about 0.164 acres. Temporary Easements, including a temporary access road, on this property comprise 0.316 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use both in the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,778 per acre, Mr. Kelly testified that his conclusion of the indicated market value per acre was $1,700, with the value of the whole property before taking being $10,744.00. Mr. Kelly stated that he took into account that in different parts of the Counties under consideration rates of appreciation may differ depending on various economic circumstances.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $209.00, and the use of temporary workspace for two years at $74.00. Mr. Kelly testified that he did not find damages to a 0.09-acre part of the property in the easternmost corner because that portion of the property even before the imposition of the easement was abutting the road at an angle limiting its use.

Using a two-step analysis, with the value of the remainder before the acquisition being $10,535.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $10,535.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace and temporary access road for 24

months with no diminution amount due with respect to the remaining property was $283.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0484.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $500.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.CR-0497.000

***Named Defendants-landowners: The Estate of Charlene Breath, the executor, or executrix or administrator of the Estate of Charlene Breath, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Charlene Breath.***

Ms. Glenda Davis and Mr. Wayne Breath, children of Charlene Breath, participated in the hearing. Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is currently used as rural residential. The total size of the property is 11.65 acres, the permanent pipeline easement is approximately 489.93-foot long, 50-foot wide and comprises about 0.562 acres. Temporary Easements on this property comprise 0.653 acres. There are two pipeline easements on the property and a three-phase distribution power line.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his

six comparable sales ranging in value from $1,400 to $2,778 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,000, with the value of the whole property before taking being $23,300.00 when valued as vacant. The Commission credited Mr. Kelly's testimony that including the value of the house into valuation of land would be improper methodologically, because only land is being acquired in this condemnation action, and that he did take into consideration the improvement in the "before" scenario but segregated it to value only land, as he did with the comparable sales. Additionally, the pipeline intersects the property in the northwest corner and does not impact the residence. The Commission further credited Mr. Kelly's testimony that he did not assign any damages to the strip of land on the other side of the road because it was orphaned in the "before" scenario; similarly, he considered a 0.65-acre strip west of the to be of limited utility in the "before" scenario because of the existing easements in that area.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $843.00, and the use of temporary workspace for two years at $261.00. Using a two-step analysis, with the value of the remainder before the acquisition being $22,457.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $22,457 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $1,104.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0497.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of

$1,104.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tracts Nos. CR-0502.000 and CR-0503.000

*Named Defendants-landowners: Gerlene Miller as Personal Representative of the estates of Isaak Franklin and Annie B. Franklin.* Attorney Adam Sanders of Whitten Burrage was present at the hearing. Commission denied Mr. Sander's request to continue the hearing.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The total size of the property is 38.260 acres, the permanent pipeline easement is approximately 1,495.80-foot long, 50-foot wide and comprises about 1.717 acres. Temporary Easements on this property, including a temporary access road, comprise 2.804 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and residential use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,125 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,800.00, with the value of the whole property before taking being $68,868.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $2,318.00, and the use of temporary

workspace for two years at $1,009. Mr. Kelly valued at $1,080 possible limitation on use of approximately 0.8 acres due to the route of the pipeline. Using a two-step analysis, with the value of the remainder before the acquisition being $66,550 and valuing damages to the remainder at $1,080.00 Mr. Kelly concluded the value of the remainder to be $65,470.00 after the taking on January 3, 2019. Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months and partial diminution of value of 0.8 acres on the property to the remaining property was $4,407.00. Answering the Commission's questions Mr. Kelly testified that, if one were to use $1,945 as a price per acre, the compensation number would rise to $4,762.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts CR-0502.000 and CR-0503.000 to be persuasive and recommends an award of $4,762.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.  CR-0484.010

*Remaining named Defendants-landowners: The executor, executrix and, or administrator of the Estate of Janet McAfee Ayres, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Janet McAfee Ayres, deceased.* [4]

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on

---

[4] The commissioners are informed that Midship has settled with the title owner in possession of the property and has paid the agreed upon compensation.

tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is currently unimproved, has several producing oil and gas wells and a tank battery on it. The total size of the property is 34.67 acres, which are divided in two economic units for valuation. The permanent pipeline easement is approximately 1,981.54-foot long, 50-foot wide and comprises about 0.570 acres and is located fully within the Economic Unit 2. Temporary Easements, including a temporary access road, on this property comprise 1.648 acres acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,700 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,700 for the Economic Unit 1 and $1,600 for the Economic Unit 2, with the value of the whole property before taking being $56,733.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $684.00, and the use of the temporary workspace for two years at $2,365.00. Using a two-step analysis, with the value of the remainder before the acquisition being $56,049, Mr. Kelly valued at $1,920 perceived limited utility of 0.57 acres in the southwestern corner of the Economic Unit 2. Mr. Kelly concluded the value of the remainder to be $54,129 after the taking on January 3, 2019. Mr. Kelly further concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property

was $4,969.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0484.010 to be persuasive and recommends an award of nominal damages in the total amount of $500.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

## Tract No. CR-0484.020

*Remaining named Defendants-landowners: Carlin Pennon, Tina Pennon, The executor, executrix and, or administrator of the Estate of Anna Mae Cato, nee Pettus, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Anna Mae Cato, nee Pettus, deceased; The executor, executrix or administrator of the Estate of Lawrence Pettus, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Lawrence Pettus, deceased.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. Only a Temporary Access Road easement of 0.122 acres was condemned by Midship on this property. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,500 to $2,700 per acre, Mr. Kelly concluded

38

that the indicated market value per acre was $1,900, with the value of the whole property before taking being $1,900.

Based on the rights being acquired – a temporary easement only - Mr. Kelly did not perform an "after" valuation. He treated use of the temporary road as a land lease and applied a 10% rental rate for two-year period valuing the use of temporary workspace for two years at $47.00. Mr. Kelly further testified that he did not apply discounting in this instance as he dealt with a short timeframe.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0484.020 to be persuasive and recommends an award of $47.00 as the total just compensation for the taking of the temporary access easement for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.CR-0485.000

*Named Defendants-landowners: Tina Pennon; The executor, executrix or administrator of the Estate of Anna Mae Cato, nee Pettus, deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Anna Mae Cato, nee Pettus, deceased; The executor, executrix and, or administrator of the Estate of Lawrence Pettus, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Lawrence Pettus, deceased.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property is currently unimproved. The total size of the property is 2.210 acres. Only a Temporary Access Road easement of 0.011 acres was condemned by Midship on this property.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,500 to $2,700 per acre, Mr. Kelly further concluded that the indicated market value per acre was $1,600, with the value of the whole property before taking being $3,536.00. Mr. Kelly's lower valuation of this property in comparison to the neighboring tract CR-0484.020 is largely due to its irregular shape and extreme narrowness.

Based on the rights being acquired, Mr. Kelly did not perform an "after" valuation. Mr. Kelly treated the use of the temporary road as a land lease and applied a 10% rental rate for the two-year period valuing the use of temporary workspace for two years at $4.00. Mr. Kelly further testified that he did not use discounting in this instance as he dealt with a short period of use.

The Commission finds the evidence presented about just compensation for the taking of the easement on Tract CR-0485.000 to be persuasive and recommends an award of $4.00 as the total just compensation for the taking of the temporary access easement for twenty-four months, with no diminution amount due with respect to the remaining property.

## Tract No. CR-0486.020

*Remaining named Defendants-landowners: Robert R. Pennon; The executrix or administrator of the Estate of Devola Langetta Pennon, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Devola Langetta Pennon, deceased; Carlin Pennon.*

40

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property is improved with a residence. The residence and related improvements were removed from the easement and were not valued. The total size of the property is 1.0 acres. Only a Temporary Access Road easement of 0.122 acres was condemned by Midship on this property.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,500 to $2,700 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,900, with the value of the whole property before taking being $1,900.00. Mr. Kelly, in response to the Commissioners' questions, testified that he did not think using the property for commercially operating scrap yard was feasible given the location, size and access issues. The scrap currently visible on the property appears to belong to the owner-resident.

Based on the rights being acquired, Mr. Kelly did not perform an "after" valuation. He treated the use of the temporary road as a land lease and applied a 10% rental rate for the two-year period valuing the use of temporary workspace for two years at $46.00.

The Commission finds the evidence presented about just compensation for the taking of the easement on Tract CR-0486.020 to be persuasive and recommends an award of $46.00 as the total just compensation for the taking of the temporary access easement for twenty-four months,

with no diminution amount due with respect to the remaining property.

## Tract No. CR-0494.000

*Named Defendants-landowners: Rosie Breath, whether alive or deceased, and, if deceased, the executor, executrix or administrator of the Estate of Rosie Breath, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Rosie Breath, deceased.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is currently improved with a manufactured mobile home and shed structures. These improvements were removed from the acquisition and were not valued as part of the appraisal. The property is a mix of open pastureland and wooded acreage. Surface oil and gas activity exists in the southern half of the tract with several pipelines and a lease road going through the southern half in an east-west direction. The southern portion of the property is in the 100-year floodplain.

The total size of the property is 37.62 acres, the permanent pipeline easement is approximately 174.71-foot long, 50-foot wide and comprises about 0.201 acres. Temporary Easements on this property comprise 0.364 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,500 to $2,125 per

acre, Mr. Kelly concluded that the indicated market value per acre was $1,800, with the value of the whole property before taking being $67,716.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $272.00, and the use of the temporary workspace for two years at $131.00.  Using a two-step analysis, Mr. Kelly valued the remainder before the acquisition at $67,444.  Mr. Kelly further concluded that 0.25 acres on the property will have lesser utility and valued the diminution in value at $338.00.  Mr. Kelly explained that he did not find any damages in the area east of the pipeline easement because the area remained large enough for the continued determined highest and best use.  He similarly did not find any damages extending to the area south of the "damaged" area, as it was of limited utility in the "before" scenario, and the pipeline did not reduce it any further.

Mr. Kelly concluded that the value of the remainder was $67,106.00 after the taking on January 3, 2019.  Consequently, Mr. Kelly established that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with limited diminution amount due with respect to the remaining property was $741.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0494.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $900.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

**Tract No. <u>CR-0499.000</u>**

*Named Defendants-landowners: The Unknown Heirs of Clara R. Pettis, deceased, The Unknown Heirs of Buel Pettus, Sr., deceased.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property was unimproved as of the effective date of the appraisal.

The property is burdened with two existing pipelines and oil and gas wells and lease roads. The total size of the property is 40 acres, the permanent pipeline easement is approximately 1,834.51-foot long, 50-foot wide and comprises about 2.103 acres, paralleling an existing pipeline. Temporary Easements, including a temporary access road, on this property comprise 3.062 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,125 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,800, with the value of the whole property before taking valued at $72,000.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $2,840.00, and the use of the temporary workspace for two years at $1,103.00. Using a two-step analysis, with the value of the remainder

44

before the acquisition being $69,160.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $69,160.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $3,943.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0499.000 to be persuasive and recommends an award of $3,943.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No.CR-0501.000

*Remaining named Defendants-landowners: J. T. Phillips, whether alive or deceased, and, if deceased, the executor, executrix or administrator of the Estate of J. T. Phillips, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of J. T. Phillips, deceased; L. V. Phillips, whether alive or deceased, and, if deceased, the executor, executrix or administrator of the Estate of L. V. Phillips, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of L. V. Phillips, deceased; Derotha Phillips, whether alive or deceased, and, if deceased, the executor, executrix or administrator of the Estate of Derotha Phillips, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Derotha Phillips, deceased; Margaret Phillips, whether alive or deceased, and, if deceased, the executor, executrix or administrator of the Estate of Margaret Phillips, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Margaret Phillips, deceased; Jessie Phillips.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property was unimproved as of the effective date of the appraisal. It consists of a mix of rolling pastureland and wooded acreage, some wetland areas. It is encumbered with an existing oil well, three pipelines and a lease road.

The total size of the property is 39.240 acres, the permanent pipeline easement is approximately 257.36-foot long, 50-foot wide and comprises about 0.295 acres. Temporary Easements on this property comprise 0.227 acres. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,400 to $2,125 per acre, Mr. Kelly concluded that the indicated market value per acre was $1,700, with the value of the whole property before taking valued at $6,708.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $377.00, and the use of the temporary workspace for two years at $77.00. Using a two-step analysis, with the value of the remainder before the acquisition being $66,331 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $66,331 after the taking on January 3, 2019.

46

Mr. Kelly explained that he did not find an area of 0.2 acres in the northeastern corner to be damaged because that area consisted of wetlands collecting a fair amount of surface water; that area could continue to be used for the same use as before the taking.  In Mr. Kelly's opinion, the pipeline easement did not create any new limitations to usability of that portion that had not existed prior to the taking.  Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $454.00.

The Commission finds the evidence presented concerning just compensation for the taking of the easements on Tract CR-0501.000 to be credible and recommends an award of $454.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. <u>CR-0693.000</u>

*Remaining named Defendants-landowners: The executor, executrix and, or administrator of the Estate of Fred O. Lofton, Sr., deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Fred O. Lofton, Sr., deceased; The executor, executrix and, or administrator of the Estate of Dorothy Lofton, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Dorothy Lofton, deceased; The executor, executrix or administrator of the Estate of Fred Lofton,  Jr., deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Fred Lofton, Jr., deceased; The executor, executrix or administrator of the Estate of Craig Lofton, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Craig Lofton, deceased; Wilma J. Peavy Lofton; Etoya Daly; Andre Brumfield.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is improved with a manufactured mobile home and related site improvements.  Those improvements are removed from the acquisition area and are not valued as part of this appraisal.  The property is encumbered with a pipeline.  The total size of the property is 39.5 acres, the permanent pipeline easement is approximately 1,322.08-foot long, 50-foot wide and comprises about 4.4 acres.  Temporary Easements on this property comprise 1.898 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios.  Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $3,333 to $5,049 per acre, Mr. Kelly concluded that the indicated market value per acre was $4,400, with the value of the whole property before taking valued at $173,800.  Mr. Kelly explained that he did not consider possible airspace zoning restrictions from a nearby airport because there was an existing house on the tract, and if such restrictions existed, they have not prevented current and continued use of the property for its highest and best use.  Mr. Kelly further testified that there is a significant distance to the foreign pipeline laid just south of the subject property, therefore there is no "orphaning" of that area.  Moreover, the southern part of the property has a steep topography and has no access other than through the rest of the property, thus, the opportunities

for its development for rural residential use were limited in the "before" scenario.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $5,009.00, and the use of temporary workspace for two years at $1,670.00. Using a two-step analysis, with the value of the remainder before the acquisition being $168,791.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $168,791.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $6,679.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0693.000 to be credible and persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $7,550.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### **Tract No. CR-0700.000**

***Named Defendants-landowners: The executor, executrix or administrator of the Estate of Fred Lofton, Jr., deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Fred Lofton, Jr., deceased; The executor, executrix or administrator of the Estate of Craig Lofton, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Craig Lofton, deceased; Carolyn Pirtle; Elaine Johnson; the executor, executrix or administrator of the Estate of Luther Johnson, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Luther Johnson, deceased; the executor, executrix or***

*administrator of the Estate of Alberta Douglas, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Alberta Douglas, deceased; the executor, executrix and, or administrator of the Estate of Cecil Johnson, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Cecil Johnson, deceased; Katherine Johnson; Albert Johnson; Charles Johnson; the executor, executrix or administrator of the Estate of Dorothy Lofton, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Dorothy Lofton, deceased; David L. Walker; Wilma J. Peavy Lofton*.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property was unimproved as of the effective date of the appraisal, consisted primarily of woodland, and most of it was in the floodplain. The property is encumbered with a pipeline, which Midship is paralleling, and an overhead electric transmission line. The total size of the property is 19.55 acres, the permanent pipeline easement is approximately 706.51-foot long, 50-foot wide and comprises about 0.811 acres. Temporary Easements on this property comprise 1.057 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $3,063 to $4,893 per acre, Mr. Kelly concluded that the indicated market value per acre was $4,000, with the whole

property before taking valued at $8,200.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $2,433.00, and the use of the temporary workspace for two years at $846.00. Using a two-step analysis, with the value of the remainder before the acquisition being $75,767.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $75,767.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $3,279.00.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0700.000 to be persuasive and after making a slight adjustment for normal or typical yearly increases in market value per acre per year recommends an award of $3,300.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0701.000

*Named Defendants-landowners: Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Warren H. Herriott, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Warren H. Herriott, deceased; Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Sammie J. Herriott, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Sammie J. Herriott, deceased.* Attorney James

Randall Miller appeared on behalf of the landowners.

Attorney Miller objected to evidence-taking on these three tracts because, in his opinion, a settlement had been reached between Midship and the owners of the property. Mr. Miller further objected to taking of evidence regarding the condition of the property post-date of taking. Attorney Zabel, on behalf of Midship, responded that a settlement agreement has not been reached. Mr. Zabel further asserted that any evidence of the construction on the property after January 3, 2019, was not allowed pursuant to the Court's instructions, and it could not be in front of the Commission.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is currently unimproved, has a creek flowing on it. There is an existing electric transmission line and a pipeline. Additionally, a significant portion of the property is in 100-year floodplain. The total size of the property is 39.55 acres, the permanent pipeline easement is approximately 662.60-foot long, 50-foot wide and comprises about 0.761 acres. Temporary Easements on this property comprise 0.76 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $3,333 to $5,049 per acre, Mr. Kelly concluded that the indicated market value per acre was $4,000.00,

with the value of the whole property before taking valued at $158,200.

Mr. Kelly testified responding to the Commission's questions that he relied on all six comparable sales and did not consider Sale 5 to be an outlier because it allowed him to bracket the subject property with the properties that are larger in size. Further, it had a creek on it similar to the subject property. The average per acre value of his comparable sales is $4,425, and among the factors that led him to the value below that number - the subject property was 90% in the 100-year floodplain, and it did not contain a paved-road frontage. Mr. Kelly testified that presence of a creek could be considered as an enhancing quality, however, that usually was true for larger in size properties. He did not consider this tract as one property with two other tracts because of a slight difference in title. Mr. Kelly further explained that his 2010 FEMA floodplain map was the most recent available. Mr. Kelly did not know whether an actual flood has ever happened on the property. Mr. Kelly did not see any Letters of Revision of the floodplain map caused by XTO's work in the area.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $2,283.00, and the use of the temporary workspace for two years at $608.00. Using a two-step analysis, with the value of the remainder before the acquisition being $155,917.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $155,917.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use thereof temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $2,891.00. Mr. Kelly agreed that if one were to use per acre value of $4,665 then the total compensation number would rise to $3,372.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0701.000 to be persuasive and after making a slight adjustment for normal or typical yearly increases in market value per acre per year recommends an award of $3,500.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tracts No.  CR-0703.000 and CR-0709.000

*Named Defendants-landowners: Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Warren H. Herriott, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Warren H. Herriott, deceased; Denise K. Davis (being one and the same person as Denise H. Davis), as Special Administrator of the Estate of Sammie J. Herriott, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Sammie J. Herriott, deceased.* Attorney James Randall Miller appeared on behalf of the landowners.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property was unimproved as of the effective date of the appraisal and was used for cattle and crop-growing.  The majority of two tracts are in a 100-year floodplain.  The property is encumbered with two pipelines, one of which Midship pipeline parallels.  The total size of the property is 398.43 acres, the permanent pipeline easement is approximately 3,332.76-foot long, 50-foot wide and comprises about 3.825 acres.  Temporary Easements, including a temporary

54

access road, on this property comprise 6.011 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $2,307.00 to $3,483.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,000.00, with the value of the whole property before taking valued at $1,195,290. Mr. Kelly explained that he included an older 2014 sale of a nearby property because 2014 was a year with the highest commodities prices for the area, and, given the subject property's current use for crop production and cattle operations, he viewed it as very relative. Mr. Kelly's comparable Sale 6 had water-selling operation, and he assumed in his appraisal that the subject property would have similar rights. Sale 6 also had a combination of alfa-alfa, wheat, and cattle-growing, while the subject property appeared to have only wheat-growing and cattle operations.

Mr. Kelly further testified that the average value of all six comparable sales --$2,679.00 -- was lower than his indicated value, but, if only Sales 5 and 6 were averaged, the number would be $3,249.50. If the latter number were to be increased by 8% for three years, the number will rise to $4,093.43. Mr. Kelly did not think that the $4,093.43 per acre value would more accurately represent the subject property's value as of the date of taking than his concluded $3,000 valuation, because, for comparison, a property with the superior than the subject property characteristics was sold at $3,483 an acre. In the expert's opinion, plain time-based adjustment is incorrect without considering other factors. Mr. Kelly confirmed that if an average value of his six comparable sales, $2,679 per acre, were adjusted by 8% for three years, it would produce

a $3,374.77 figure.  Mr. Kelly disagreed that his concluded per acre value was too low by $375 but agreed that the number was not entirely unreasonable.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $8,606.00, and the use of the temporary workspace for two years at $3,606.00.  Using a two-step analysis, with the value of the remainder before the acquisition being $1,186,684.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $1,186,684.00 after the taking on January 3, 2019.  Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $11,620.00.  Mr. Kelly confirmed that if a price per acre of $4,093.43 were used versus $3,000.00 then the total just compensation amount would be $15,855.22 and, if a $3,374.77 figure were utilized, then the total just compensation number would be $13,071.61.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts CR-0703.000 and CR-0709.000 to be persuasive and recommends an award of $13,000.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0626.000

*Named Defendants-landowners: Larry D. Smith and Barbara J. Smith.*  Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-

0894.000 and CR-0484.000 was incorporated by reference.  The property is improved with a single-family residence, multiple barn or shed structures.  These improvements were removed from the acquisition area and were not valued as part of this appraisal.  The property consists of a mix of open pasture with some woodland dispersed, and some improved pastureland, which has been used historically for hay production.  The property is encumbered with another pipeline, paralleling Midship's easement. It also has an airstrip.  A portion of the property is in a 100-year floodplain.  The total size of the property is 45.21 acres, the permanent pipeline easement is approximately 876.85-foot long, 50-foot wide and comprises about 1.006 acres.  Temporary Easements on this property comprise 1.375 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios.  Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $2,424.00 to $4,893.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $4,200.00, with the value of the whole property before taking valued at $189,822.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $3,169.00, and the use of the temporary workspace for two years at $1,155.00.  Using a two-step analysis, with the value of the remainder before the acquisition being $186,713.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $186,713.00 after the taking on January 3, 2019.  Mr. Kelly testified that on a 2.91-acre portion of the property, to which access could be limited during the construction, he applied a 10% rental value for 24 months, similar to valuing a

workspace easement, arriving at $2,444.00 in compensation.

Mr. Kelly testified that floodplain on this property did not play the decisive role in his appraisal. He placed a little more emphasis on comparable Sales 3, 4 and 6 where he did not have to make adjustments for improvements but did make a "market condition" adjustment for time. Mr. Kelly disagreed that the average price of Sales 4 and 5 adjusted for time should be considered as the indicated value per acre for this property. If such a method were used, at least Sale 3 should be added to consideration. Mr. Kelly confirmed that the average price of Sales 3, 4, 5 and 6 would be $3,626 per acre, and if that number were adjusted by 8% for two years it would produce $4,229.37.

Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $6,768.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0626.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $7,250.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0627.000, CR-0628.000, and CR-0629.000

*Named Defendants-landowners: Casey B. Smith and Kristy J. Smith.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on

tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is improved with two single-family residences, barn or shed structures. These improvements were removed from the acquisition and were not valued as part of this appraisal. The property contains a mix of pasture and wooded areas. A wet-weather creek traverses the central part of the property, there is also a stock tank, a part of the property is in the floodplain. The property is encumbered with at least one other pipeline and an oil and gas well.

Mr. Kelly appraised all three tracts as one unit based on the unity of ownership, use and contiguity. The total size of the property is 127.27 acres, the permanent pipeline easement is approximately 1,902.88-foot long, 50-foot wide and comprises about 2.184 acres. Temporary Easements on this property comprise 2.3 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six 2016 – 2018 comparable sales ranging in value from $2,424.00 to $3,550.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,600.00, with the value of the whole property before taking valued at $458,172.00. Mr. Kelly explained that his Sale 1 was closer in time to the date of taking and similarly had a wet-weather creek on it. Sales 4, 3 and 2 were also very supportive of his determination, he concluded value fell on the higher end of his comparable sales. Mr. Kelly opined that adjusting his indicated value of $3,600 by 8% for two years would increase it to $4,199, but such an adjustment would disregard other market considerations and would not be proper. Mr. Kelly

confirmed that an indicated price of $3,800 would not be offensive to him.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $5,897.00, and the use of temporary workspace for two years at $1,656.00. Mr. Kelly further opined that limited access to 3.1 acres during construction warranted compensation of a rental value of 10% for 24 months of $2,232.00.

Using a two-step analysis, with the value of the remainder before the acquisition being $452,275.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $452,275.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of temporary workspace and reduced for 24 months access to a small area for 24 months with no diminution amount due with respect to the remaining property was $9,785.00.

Mr. Kelly testified that it would be improper to try to value portions of the property separately and then combine the results. Such an approach would mean a changed highest and best use of the property for subdivision, and he could not agree with such a conclusion. Mr. Kelly further explained that he did not find damages to the area between the Kinder Morgan's pipeline and Midship's, because if damages had occurred, they would have occurred in the "before the Midship's taking" scenario. Additionally, since he determined that agricultural and recreational use was the highest and best use for the property, including the portion between the pipelines, and that highest and best use would not change on that portion, he would not consider it to be orphaned and leading to diminution to the remainder. Mr. Kelly further confirmed that use of $3,800 as an indicated per acre value would raise the just compensation amount to $10,328.61.

60

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts CR-0627.000, CR-0628.000, and CR-0629.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $11,413.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0636.000

*Named Defendants-landowners: H&H 1313, Inc.* Counsel for the defendant did not participate in the hearing.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The subject property was unimproved at the time of the appraisal. The total size of the property is 4.640 acres, permanent pipeline easement is approximately 114.58-foot long, 50-foot wide and comprises about 0.035 acres with no actual pipeline crossing the property; Temporary Easements on this property comprise 0.414 acres. There is a pipeline crossing the same corner of the property as Midship's but closer to the center, thus, separating the center and majority of the property from Midship's easement.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for commercial use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative

adjustments to his four comparable sales ranging in value from $10,692 to $70,122 per acre, Mr. Kelly concluded that the indicated market value per acre was $32,000.00, with the whole property before taking valued at $147,640.00.

Mr. Kelly testified that he tried to select sales of comparable properties that, in addition to similarity in size and location, also had similar traffic counts – around 3,000 cars a day.  He further testified that his Sale 1 was located away from I-35, making it inferior.  Among the remaining sales, Sale 3 was highly superior being located within Ardmore.  Sale 2 had an I-35 frontage but no direct access to it, while Sale 4 had more similarity to the subject property.  Mr. Kelly was unable to confirm the conditions of sale of the subject property that occurred after Midship was granted possession of the easements, unconfirmed information shows price of $42,000 per acre.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $840.00, and the use of the temporary workspace for two years at $90.00.  Using a two-step analysis, with the value of the remainder before the acquisition being $148,480.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $148,480.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $930.00. Mr. Kelly further testified that if he were to use $42,000 as an indicated price per acre, total just compensation would rise to $1,240.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract CR-0636.000 to be persuasive and recommends an award of $1,240.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. CR-0701.010

*Named Defendants-landowners: Lois J. Lofton Revocable Trust dated August 1, 1997, Lois J. Lofton, Trustee; Brenda J. Lofton.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The 15-acre property is currently unimproved, consists of pastureland and wooded acreage. Only a temporary access road on this property comprising 0.369 acres was taken on this property.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $3,063.00 to $5,049.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $4,300, with the whole property before taking valued at $64,500.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the use of temporary access road for two years at $317.00. Using a two-step analysis, with the value of the remainder before the acquisition being $64,500.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $64,500.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the use of the temporary access road for 24 months with no diminution amount due with respect to the remaining property was $317.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0701.010 to be persuasive and recommends an award of $317.00 as the total just compensation for the taking of said easement, use of the temporary easements for twenty-four months, with no diminution amount due with respect to the remaining property.

## Tract No. CR-0704.000

*Remaining named Defendants-landowners: Estate of Levi Birt, Jr., deceased, and all heirs and, or legatees, devisees, trustees, creditors and assigns of Levi Birt., Jr, deceased; Estate of Ewing C. Lofton, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Ewing C. Lofton, deceased; Brenda Lofton; Gussie Hall.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property was unimproved as of the effective date of the appraisal. The property is landlocked being surrounded by the tracts CR-0701.000 and CR-0703.000. Most of the tract is occupied

by a drill site.

The total size of the property is 10 acres, the permanent pipeline easement is approximately 689.36-foot long, 50-foot wide and comprises about 0.791 acres. Temporary Easements inclusive of a temporary access road on this property comprise 0.897 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for assemblage for agricultural and recreational use in both the "before" and "after" the taking scenarios, more particularly, to be absorbed by the surrounding property - Tracts CR-0701.000 and CR-0703.000. While typically such a property would be 99% discounted, Mr. Kelly appraised it as though vacant.

Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $2,307.00 to $3,483.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,000, with the whole property before taking valued at $30,000.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $1,780.00, and the use of the temporary workspace for two years at $538.00. Using a two-step analysis, with the value of the remainder before the acquisition being $28,220.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $28,220.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $2,318.00.

Mr. Kelly testified responding to the Commission's questions that he did not consider imposition of the Midship's easement to orphan 0.75 acres south of the easement for a number of reasons: 1) the property would be already heavily discounted by its limited usability due to a gas well pad on it; 2) any orphaning would have been done by the pre-existing pipeline easement, 3) the lease road, which Midship crosses, further diminishes usability of that land, 4) the area lies between the power line and the existing pipeline, and 5) the area is fully located in the floodplain.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract CR-0704.000 to be persuasive and recommends an award of $2,318.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. BR-0860.000

***Named Defendants-landowners: Larry Hughes and Jerry Hughes.***

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property it straddles the Bryan and Johnston Counties line. It is improved with the barn or shed structures and related site improvements. These improvements were removed from the acquisition area and were not valued as part of this appraisal. A creek runs through the middle of the property in east-west direction. The property is encumbered with a preexisting pipeline.

The total size of the property is 411.25 acres, the permanent pipeline easement is approximately 2.030.71-foot long, 50-foot wide and comprises about 2.331 acres. Temporary

Easements on this property comprise 2.893 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $1,769 to $3,016 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,500, with the whole property before taking valued at $1,028.125.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $4,371.00, and the use of the temporary workspace for two years at $1,447.00. Using a two-step analysis, with the value of the remainder before the acquisition being $1,023,754 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to remain $1,023,754 after the taking on January 3, 2019.

Mr. Kelly further testified that although his appraisal contained an opinion estimate of just compensation for possible hunting disruption on 75 acres due to construction, which he appraised at $10 per acre for 24 months, for the total of $1,500, he should have removed that after receiving the Court's instructions and should have deducted $1,500 from his appraisal. Mr. Kelly testified in response to the Commission's questions that he used one comparable sale from Love County because it had a good functional utility comparability with the subject property as to recreational use facet. Mr. Kelly further testified that plain upward adjustment of the indicated value based on the timing of comparable sales was not proper. Various considerations must be allowed with regard to different comparable sales. For example, Sale 2 was half the size of the subject property and located very close to Durant; Sale 3 was a one third in size and was the

closest in time – June of 2017; Sale 4 was inferior locationally and did not have as good recreational characteristics as the subject property, while Sale 6 was larger than the subject property but had some exceptional recreational and agricultural qualities, for which a premium was paid. If sales 1, 2, 3 and 5 were averaged, the value would be $2,300 per acre, most of these sales occurred within 18 months of the date of taking. Mr. Kelly testified that he did not average the sales but looked instead at characteristics of the properties sold. For example, Sale 3 being in the immediate proximity had a price of $2,575 an acre. In Mr. Kelly's observation, appreciation of the properties of this size and highest best use in that area in 2016-2018 was 4% to 8%. Mr. Kelly confirmed that utilizing 8% increase to his indicated value would produce $2,700 per acre.

Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $5,818.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract BR-0860.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $6,285.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

**Tracts No. BR-0903.000, BR-0904.000 and BR-0905.000**

*Named Defendants-landowners: Misty Hall Murphree; Marla Hall Richardson; Megan Pearl Murphree; Alex Wendell Wayne Murphree; Torrey McGraw Lester; Kasidy Niegal Lester; Kalan Craig Richardson; Tanner Blane Richardson; Andy Jack Murphree*

*and Marranda Sue Murphree, husband and wife.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. Mr. Kelly testified that he appraised three tracts together because of the unity of ownership, use and contiguity. The property was improved with three manufactured homes, barn structures, and related site improvements as of the effective date of the appraisal. These improvements were removed from the acquisition and have not been valued as part of the appraisal. The property primarily consists of open pastureland with some hardwood trees and several stock tanks scattered throughout. The property access is through a county road. The property is encumbered with a pipeline easement. The total size of the property is 217.82 acres, the permanent pipeline easement is approximately 2,891.26-foot long, 50-foot wide and comprises about 4.24 acres. Temporary Easements, including temporary access road, on this property comprise 5.872 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his four comparable sales ranging in value from $2,320 to $2,961 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,700.00, with the whole property before taking valued at $588,114.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $8,586.00, and the use of the temporary workspace for two years at $3,171.00. Using a two-step analysis, with the value of the remainder before the acquisition being $579,528.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $579,528.00 after the taking on January 3, 2019.

Mr. Kelly testified in response to the Commission's questions that he did not find any damages to the land south of the pipeline but north of the boundary because about 500 feet remain between the two, and because there was a pre-existing easement there. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $11,757.00. Mr. Kelly further testified that he considered his valuation fair and reasonable, however, appreciation of his sales by 8% would not be unreasonable.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tracts BR-0903.000, BR-0904.000 and BR-0905.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $12,700.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. BR-0907.000 and BR-0909.000

*Named Defendants-landowners: Billy Miller.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and

70

materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. As of the effective date of the appraisal, the property was improved with a single-family residence, barn structures, and related site improvements. These improvements were removed from the acquisition and were not valued as part of this appraisal. The property historically had recreational and agricultural use. There is a pipeline easement on the property, which Midship parallels for a significant distance deviating in one place because of a pond. The total size of the property is 146.280 acres, the permanent pipeline easement is approximately 2,784.77-foot long, 50-foot wide and comprises about 3.196 acres. Temporary Easements on this property comprise 3.956 acres.

The Commission credited Mr. Kelly's testimony that he appraised two tracts as a single unit relying on the unity of ownership, contiguity, and the unity of use rule. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded the highest and best use for the property to be for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his four comparable sales ranging in value from $2,320 to $2,961 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,700.00, with the whole property before taking valued at $ 394,956.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $6,472.00, and the use of the temporary workspace for two years at $2,136.00. Using a two-step analysis, Mr. Kelly determined the value of the remainder before the acquisition to be $ 388,484.00. Mr. Kelly further testified that he did

not find a different highest and best use resulting from the taking of the Midship's easement, however he did recognize a reduced utility of approximately 3.13 acres due to irregular shape between the two pipeline easements and, consequently, diminished the value of that acreage by 75% valuing compensation at $6,339.00. Thus, Mr. Kelly concluded the value of the remainder to be $382,145.00 after the taking on January 3, 2019. Based on that finding, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $14,947.00. Mr. Kelly confirmed that adjusting his opinion number by 8% would raise it to $16,142.76.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts BR-0907.000 and BR-0909.000 to be persuasive and recommends an award of $16,143.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. BR-0925.000

*Named Defendants-landowners: The estate of Donald Andrew Morris, the executor, or executrix or administrator of the Estate of Donald Andrew Morris, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Donald Andrew Morris.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property is currently open, improved pasture with no buildings. The property is burdened with

72

a pipeline easement. The total size of the property is 32 acres, the permanent pipeline easement is approximately 1,514.93-foot long, 50-foot wide and comprises about 1.739 acres. Temporary Easements on this property comprise 1.738 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his five comparable sales ranging in value from $2,000.00 to $3,400.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,800.00, with the whole property before taking valued at $89,600.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $3,652.00, and the use of temporary workspace for two years at $973.00. Using a two-step analysis, with the value of the remainder before the acquisition being $85,948.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $85,948.00 after the taking on January 3, 2019. Because he did not find any damage to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $4,625.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tract BR-0925.000 to be persuasive and recommends an award of $4,625.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

**Tracts No.  BR-0994.000, BR-0995.000 and BR-0996.000**

*Named Defendants-landowners: Henderson G. Anderson and Sherron Katherine Anderson, Co-Trustees of the Anderson Family Revocable Trust under written agreement dated January 21, 2009.*

The Commission was apprised that FERC authorized a reroute involving this property due to nearby ecological and cultural finds along the original route.  Because of the reroute, part of the Midship's easements was condemned in this case, while a part was condemned in the state court.  In state court, the special commissioners have set their award that was deposited with the state court, but the trial is pending.  In this case, Midship was seeking compensation for only the portion of the route condemned in federal court.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.  Mr. Kelly testified that, based on the unity of ownership, use and contiguity, he appraised all three tracts as one unit.  He provided separate appraisal numbers for the portions condemned in the federal case as well as in the state case.

Mr. Kelly testified that this property consists of a mix of improved pasture, native pasture, and woodland.  The property is located along the south side of East County Road 2078, and approximately 225 feet west of Sulphur Springs Road.  It was unimproved as of the effective date of the appraisal.  The total size of the property is 360 acres, the permanent pipeline easement on the condemned in federal court portion of the route comprises about 2.481 acres.  Temporary Easements on the condemned in federal court portion of the route comprise 3.546 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his four comparable sales ranging in value from $1,66.00 to $2,732.00 per acre, approximately 16-18 months prior to the date of taking, Mr. Kelly concluded that the indicated market value per acre was $2,100.00, with the value of the whole property before taking to be $756,000.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement on the portion condemned in federal court at $3,908.00, and the use for two years of the temporary workspace on the portion condemned in federal court at $1,489.00. Using a two-step analysis, Mr. Kelly appraised the value of the remainder before the acquisition at $ 747,515.00.

Mr. Kelly further testified that he did not find any diminution to the remainder caused by the imposition of the easements taken in the federal case, but he did assign a partial limitation on use of 6.6 acres between the two pipeline easements on the portion condemned in the state court. Consequently, Mr. Kelly concluded the value of the remainder to be $737,121.00 after the taking in both federal and state courts. Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of temporary workspace for 24 months on the portion condemned in federal court with no diminution amount due with respect to the remaining property was $5,397.00.

Responding to the Commission's questions, Mr. Kelly testified that if the Commission were to appreciate his indicated market value by 8% and then by 4% to adjust from his

comparable sales to the date of taking, the indicated per acre value would be $2,358.72, and the total compensation number based on that value would be $6,100.00.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tracts s BR-0994.000, BR-0995.000 and BR-0996.000 to be persuasive and recommends an award of $6,100.00 as the total just compensation for the taking of said easement, use of temporary workspace for twenty-four months on the portion condemned in federal court, with no diminution amount due with respect to the remaining property on the portion condemned in federal court.

### Tracts No. BR-0991.000 and BR-0993.000

***Named Defendants-landowners: Wayne Caldwell and Donna Caldwell.***

The Commission was apprised that FERC authorized a reroute involving this property due to ecological and cultural finds along the original route. Because of the reroute, Midship did not take a permanent easement to build a pipeline on the tracts at issue, nor did it use any portion of the property temporary as workspace.

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. Mr. Kelly testified that because no taking has occurred, he did not update his appraisal of 2017.

Per his 2017 appraisal, before the pipeline was re-rerouted, the property was appraised as unimproved. The total size of the property is 73.3 acres. Mr. Kelly appraised both tracts as one unit due to the unity of ownership, use and contiguity.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios.  Utilizing the sales comparison approach and having made qualitative adjustments to his four comparable 2015-2016 sales ranging in value from $2,200.00 to $2,813.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,500.00, with the value of the whole property before taking valued at $ 183,250.00.

Based on the indicated value, and using a two-step analysis, Mr. Kelly concluded the value of the remainder before the potential acquisition to be $179,363.00. If the permanent easement were acquired, Mr. Kelly valued the compensation for it at $3,887.00, and potential use of the temporary workspace for 24 months at $1,468.00.  Mr. Kelly did not find any damages to the remainder by the potential imposition of the permanent easement.  Having found no damages to the remainder Mr. Kelly concluded the value of the remainder to remain $179,363.00.  Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $5,355.00. However, no easements, neither permanent not temporary, have ultimately been taken by Midship on these tracts.  The only use of the property could have been to conduct a cultural survey. Therefore, Midship requested nominal damages to be awarded for use of the property for cultural survey.

Mr. Kelly agreed that if the Commission assumed 8% appreciation of his appraised compensation it would rise to $5,783.40.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts BR-0991.000 and BR-0993.000 to be persuasive and recommends an award of nominal damages in the amount of $1,000.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tracts No. BR-1000.000 and BR-1001.000

*Named Defendants-landowners: Nolen G. Grounds and Jackie M. Grounds; The executor, executrix or administrator of the Estate of Paul Akins, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Paul Akins, deceased; the executor, executrix or administrator of the Estate of Clifford Akins, deceased, and all heirs or legatees, devisees, trustees, creditors and assigns of Clifford Akins, deceased.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.

The property is improved with a manufactured home, barn structures and related site improvements.  These improvements are removed from the proposed acquisition and have not been valued as part of Mr. Kelly's appraisal.  An S-shaped creek runs through the property.  There is a pre-existing pipeline easement on the property.  The total size of the property is 45.7 acres, the permanent pipeline easement is approximately 770.47-foot long, 50-foot wide and comprises about 0.884 acres.  Temporary Easements on this property comprise 0.858 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his five 2016-2018 comparable sales ranging in value from $2,000 to $2,900 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,700.00, with the value of the whole property before taking valued at $123,390.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $1,790.00, and the use of temporary workspace for two years at $464.00. Using a two-step analysis, with the value of the remainder before the acquisition being $121,600.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $121,600.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $2,254.00.

Mr. Kelly testified that if he were to value the tracts separately, if there were not a complete unity of ownership, he would be comfortable valuing the 35-acre tract at $2,700 and the 10-acre tract at a high of $3,240 per acre. Under those circumstances, calculated just compensation for the 10-acre tract would be $761.00 and for 35-acre tract - $1,791.00. If those numbers were to be increased by 8%, the total just compensation amount for the 10-acre tract would be $1,934.28 and for $35-acre tract $822.00, total for both tracts - $2,756.28.

The Commission finds the evidence presented with regard to just compensation for the taking of the easement on Tracts BR-1000.000 and BR-1001.000 to be persuasive and recommends an award of $2,760.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. BR-1002.000

*Named Defendants-landowners: The William T Cooley and Frances L Cooley Survivors Trust, Frances L. Cooley Trustee; Billy Gene Risner; Franklin James Risner; David Alan Risner; Michelle Berdahl; Charleen Hunter; The Unknown Heirs of Franklin Delano Risener; The Unknown Heirs of Jack Wesley Risener; The Unknown Heirs of George Gunter Risener; The Unknown Heirs of Billie Gene Risener.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The property was unimproved as of the effective date of the appraisal, consists of a mix of hardwoods and pastureland, and there are two stock tanks on it. There is a pre-existing pipeline easement on the property. The total size of the property is 100 acres, the permanent pipeline easement is approximately 2,830.7-foot long, 50-foot wide and comprises about 3.249 acres. Temporary Easements on this property comprise 3.53 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both

the "before" and "after" the taking scenarios. Using the sales comparison approach and having made qualitative adjustments to his six 2015-2018 comparable sales ranging in value from $2,000 to $2,900 per acre, Mr. Kelly concluded that the indicated market value per acre was $2,400.00, with the whole property before taking valued at $240,000.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $5,849.00, and the use of temporary workspace for two years at $1,695.00. Using a two-step analysis, with the value of the remainder before the acquisition being $234,151.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to be $234,151.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $7,544.00.

Responding to the Commission's questions, Mr. Kelly testified that he did not think there was a need for time adjustment, because one of his comparable sales occurred in 2018 and was at $2,000. Mr. Kelly further testified that he did not think that straight mathematical adjustment of 2015 sale should be used, as all his sales bring in different facets to value the subject property and he considered his valuation to be appropriate.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract BR-1002.000 to be persuasive and after making adjustments for normal or typical yearly increases in market value per acre per year recommends an award of $9,335.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

**Tracts No.   JO-0753.000 and JO-0754.00**

***Named Defendants-landowners: Raymond A. Hulsey; Ranada D. Hulsey.***   Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.   The property was improved with a mobile home and multiple barn/shed structures as of the effective date of the appraisal.   These improvements were removed from the acquisition area and were not valued as part of this appraisal.   The total size of the property is 22.080 acres, and it was valued as one unit based on the unity of ownership, use and contiguity.   Rock Creek Road traverses the property.   The property is traversed by a pre-existing pipeline easement.   The permanent pipeline easement is approximately 859.94-foot long, 50-foot wide and comprises about 0.988 acres.   Temporary Easements on this property comprise 0.388 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential use in both the "before" and "after" the taking scenarios.   Utilizing the sales comparison approach and having made qualitative adjustments to his four comparable sales ranging in value from $3,063.00 to $3,667.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,500.00, with the value of the whole property before taking being $77,280.00.   One of his comparable sales was within the same subdivision and was sold at $3,063 per acre.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $ 2,593.00, and the use of temporary workspace for two years at $272.00.  Using a two-step analysis, with the value of the remainder before the acquisition being $74,687.00 and having found no damages to the remainder Mr. Kelly concluded the value of the remainder to be $74,687.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $2,865.00.

In response to the Commission's questions, Mr. Kelly testified that if the Commission were to find that there was an orphaned area between two pipeline easements area it would comprise about 0.43 acres, with compensation for that area based on the indicated value being $1,129.00.  Mr. Kelly testified that he did not think orphaning in this case would be appropriate as the other easement was a blanket easement, i.e., the pipeline could claim whatever it deemed reasonable, and Midship was paralleling it.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tracts s JO-0753.000 and JO-0754.00 to be persuasive and recommends an award of $2,865.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. JO-0758.000

*Named Defendants-landowners: Robert Eugene Harris.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and

materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference. The 20-acre property was improved with multiple barn/shed structures and related site improvements as of the effective date of the appraisal. These improvements were removed from the acquisition area and were not valued as part of this appraisal. The permanent pipeline easement is approximately 557.57-foot long, 50-foot wide and comprises about 0.638 acres; no Temporary Easements were used on this property.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for rural residential in both the "before" and "after" the taking scenarios. Utilizing the sales comparison approach and having made qualitative adjustments to his four 2016-2018 comparable sales ranging in value from $3,063.00 to $3,667.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,500.00, with the value of the whole property before taking valued at $70,000.00.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $1,675.00. Using a two-step analysis, Mr. Kelly determined the value of the remainder before the acquisition to be $68,325.00. He determined a reduced utility of an area of 0.27 acres between the pipeline and the road and valued the remaining value of that area at $236.00. Mr. Kelly concluded the value of the remainder to be $ 67,616.00 after the taking on January 3, 2019. Mr. Kelly further concluded that the total just compensation for the taking of the permanent easement with diminution amount due with respect to the remaining property was $2,384.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract JO-0758.000 to be persuasive and recommends an award of $2,384.00 as the total just compensation for the taking of said easement, use, if any, of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### Tract No. JO-0819.000

*Named Defendants-landowners: Ralph D. Ragan.*

Without objections, tract-specific exhibits were admitted in addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the properties at issue in this case given during the hearings on tracts BR-0893.000, BR-0894.000 and CR-0484.000 was incorporated by reference.  The 39.28-acre property had a mobile home as of the effective date of the appraisal.  The permanent pipeline easement is approximately 659.94-foot long, 50-foot wide and comprises about 0.758 acres.  Temporary Easements on this property comprise 1.238 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the property was for agricultural and recreational use in both the "before" and "after" the taking scenarios.  Using the sales comparison approach and having made qualitative adjustments to his six comparable sales ranging in value from $2,163.00 to $3,333.00 per acre, Mr. Kelly concluded that the indicated market value per acre was $3,000, with the whole property before taking valued at $117,840.00.

In response to the Commission's questions Mr. Kelly testified that his Sales 1 and 2 were the most recent, less than one year old, bracketed the subject property in size and value, with sale 1 being the only one above $3,000.

Based on the indicated value, the rights being acquired and the size of the easements, Mr. Kelly valued the permanent pipeline easement at $568.00, and the use of the temporary workspace for two years at $742.00. Using a two-step analysis, with the value of the remainder before the acquisition being $116,134.00 and having found no damages to the remainder, Mr. Kelly concluded the value of the remainder to remain $116,134.00 after the taking on January 3, 2019. Because he did not find any damages to the remainder, Mr. Kelly concluded that the total just compensation for the taking of the permanent easement and use of the temporary workspace for 24 months with no diminution amount due with respect to the remaining property was $2,448.00.

The Commission finds the evidence presented regarding just compensation for the taking of the easement on Tract JO-0819.000 to be persuasive and recommends an award of $2,448.00 as the total just compensation for the taking of said easement, use of the temporary workspace for twenty-four months, with no diminution amount due with respect to the remaining property.

### CONCLUSION

In sum, having weighed all of the testimonial and documentary evidence, the Commission **recommends** that the Court awards to the landowners on the corresponding tracts total just compensation for Midship's January 3, 2019, taking of the easements, use of temporary workspace for 24 months and diminution to the remainder, if any, in the amounts recommended in this Report, to be paid from the funds deposited by Midship with the Court Clerk, pursuant to this Court's Order of January 3, 2019 (Doc. 623).

All aspects of this Report and Recommendations are unanimous.

Dated this 17th day of April, 2023.    Respectfully submitted,

Chris Jones, Esq., Commission Chair

86