IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MIDSHIP PIPELINE COMPANY, LLC, | § | |
| | § | |
| *Plaintiff,* | § | **Case Number: 6:18-cv-302-RAW** |
| | § | |
| vs. | § | **Judge: Ronald A. White** |
| | § | |
| **TRACT NO. BR-0860.000, 2.331** | § | |
| **ACRES OF LAND, MORE OR LESS,** | § | |
| **PERMANENT EASEMENT** | § | |
| **(PIPELINE RIGHT OF WAY) IN** | § | |
| **BRYAN COUNTY, OKLAHOMA,** *et* | § | |
| *al.,* | § | |
| *Defendants.* | § | |

## COMMISSION REPORT AND RECOMMENDATIONS

Plaintiff Midship Pipeline Company, LLC ("Midship") filed this action pursuant to the Natural Gas Act, 15 U.S.C. §§ 717a-z to obtain an order of condemnation against properties owned by defendants in Bryan, Carter and Johnston Counties, Oklahoma, to acquire easements necessary for the construction and operation of a 36-inch natural gas pipeline as authorized by the Federal Energy Regulatory Commission ("FERC"), in the interest of public convenience and necessity ("Pipeline"). The Court granted Midship possession of the easements sought in this case and, pursuant to Federal Rule of Civil Procedure 71.1, appointed a Commission to "to assist the Court in determining the compensation owed" *Order and Instructions for Commission,* at 2 (Doc. No. 796).

On October 19, 2022, Midship filed its Fifth Amended Verified Complaint for Condemnation (the "Complaint"), seeking extensions of the term of the temporary

workspace easements, additional temporary workspace easements, and temporary access road easements described therein (collectively, the "Temporary Easements"), as necessary and required for Midship to continue with, and complete, necessary assessment and remediation work on certain properties. *See* Doc. 873. Midship was unable to acquire the Temporary Easements by an agreement. *Id.* On November 2, 2022, Midship filed a Motion for Order Confirming Condemnation Authority for Temporary Workspace Extensions and Awarding Immediate Possession of the Temporary Easements and Extensions Sought in the Fourth Amended Complaint. *See* Doc. 875. On January 18, 2023, the Court granted Midship's Motion, issued an injunction and awarded Midship immediate possession upon payment of a security deposit to the Clerk of the Court. *See* Doc. 901. Midship made the required security deposit on January 20, 2023. *See* Midship's Common Exhibit 3, the receipt for the payment of the deposit. In granting the Midship's Motion, the Court directed that the Commission appointed in January 27, 2021 (Doc. 784), were to consider evidence and make recommendations to the Court as to the amount of just compensation due the defendants named in the Complaint, for the extension of the term of the Temporary Easements for two years, applying the authority and standards set forth in the Order and Instructions for Commission entered on April 29, 2021 (Doc. 796). *See* Doc. 901.

On March 24-25, 2025 the Commission held hearings for all of the tracts identified in the Complaint. Having carefully considered all of the evidence and arguments offered by the parties, the Commission now unanimously **RECOMMENDS**

2

the Court order to pay just compensation out of the funds deposited with the Court Clerk

total just compensation for Midship's use of temporary easements for 24 months to the

Landowners, including any heirs, successors and assigns of the named defendants, and

any unknown owners of the below-named tracts, in the following amounts:

## TABLE A

| Tract(s) No(s). | Remaining Defendant(s) Landowner(s) | Amount of Just Compensation Recommended |
|---|---|---|
| BR-0860.000 | Larry Hughes and Jerry Hughes | $2,314.00 |
| BR-0903.000 | Kasidy Niegal Lester and Daniel Floyd Miller | $2,812.00 |
| BR-0903.500 | Tanner Blane Richardson | $27.00 |
| BR-0904.000 | Kalan Craig Richardson | $1,394.00 |
| BR-0905.000 | Torrey McGraw Lester and Tera Michelle Lester | $1,668.00 |
| BR-0907.000 and BR-0909.000 | Billy Miller | $3,758.00 |
| BR-0994.000, BR-0995.000 and BR-0996.000 | Henderson G. Anderson and Sherron Katherine Anderson, Co-Trustees of the Anderson Family Revocable Trust under written agreement dated January 21, 2009 | $4,757.00 |
| BR-1000.000 and BR-1001.000 | Nolen G. Grounds and Jackie M. Grounds, *et al* | $815.00 |
| BR-1002.000 | The William T Cooley and Frances L. Cooley Survivors Trust, Frances L. Cooley Trustee; Billy Gene Risner; Franklin James Risner; David Alan Risner; Michelle Berdahl; Charleen Hunter; The | $3,177.00 |

3

| | | |
|---|---|---|
| | Unknown Heirs of Franklin Delano Risener; The Unknown Heirs of Jack Wesley Risener; The Unknown Heirs of George Gunter Risener; The Unknown Heirs of Billie Gene Risener, *et al.* | |
| CR-0499.000 | The Unknown Heirs of Clara R. Pettis (Pettus), deceased, The Unknown Heirs of Buel Pettus, Sr., deceased, *et al.* | $1,838.00 |
| CR-0626.000 | Larry D. Smith and Barbara J. Smith | $1,925.00 |
| CR-0627.000, CR-0628.000 and CR-0629.000 | Casey B. Smith and Kristy J. Smith | $2,530.00 |
| JO-0753.000 | Raymond A. Hulsey; Ranada D. Hulsey | $776.00 |
| JO-0819.000 | Ralph D. Ragan | $1,734.00 |

The Commission's unanimous recommendations are based on the following.

## Introduction and Legal Standards.

This case is a condemnation action brought by Midship to extend by two years the terms of the Temporary Easements to install, construct, operate and maintain a natural gas pipeline across the defendant landowners' properties. Midship's right to appropriate easements across the properties to be used to construct and operate the pipeline is based upon its receipt of the Certificate of Public Convenience and Necessity ("Certificate") from FERC, pursuant to Section 7 of the Natural Gas Act.

The defendants are the properties crossed by the Pipeline and owners of interests in them, who have not reached agreement with Midship as to the amount of just compensation for the use of the Temporary Easements sought by Midship. The

4

Commission heard testimony and considered documentary and other evidence and arguments presented and introduced during hearings on March 24-25, 2025, to determine just compensation due to the unsettled landowners.

For purposes of determining just compensation, an easement is a nonpossessory right to enter and use land in the possession of another, and it obligates the possessor not to interfere with the uses authorized by the easement grant for the purpose of a natural gas pipeline approved by FERC. An easement does not transfer ownership of the land, it only confers the right to use the land. The owner still may use the area of the easement for all purposes consistent with the easement. Midship's temporary easement rights are described in paragraphs 14,17, 30-43 of the Midship's Complaint. The easements are further described and depicted in the certified plats attached to Midship's Complaint and exhibits thereto, as amended, and in the Notices of Commencement of Condemnation Action and exhibits thereto, as amended. *See* Order and Instructions for Commission, Doc. 796 at 12-13.

The Temporary Easements have been used to conduct ongoing restoration and assessment of the necessary restoration work and, thereafter, to perform restoration, remediation and repair activities to enable Midship to operate, protect, repair, and maintain the Pipeline facilities for the transportation of natural gas in interstate commerce, and to fulfill the public purposes for which the Certificate was issued. The exact acreages of the Temporary Easements and their locations are described and depicted on the plats in the exhibits filed by Midship and are not in dispute. The two-year period, for which the Temporary Easements have been condemned, has now expired, and the Temporary

5

Easements have reverted back to the landowners. Although the Temporary Easements have terminated, compensation is due for their two-year period of use.

Rule 71.1 of the Federal Rules of Civil Procedure is very clear that the Commission "is to be confined to the performance of a single narrow but important function – the determination of a compensation award within ground rules established by the trial judge." *United States v. Reynolds*, 397 U.S. 14 (1970). The Court's Instructions to the Commission make clear that "[t]he measure of compensation for a temporary taking is the fair market value of the loss of use of the property taken. That fair market value is **the fair rental value**." Doc. 796 at 13 (emphasis added).

Midship does not dispute that it is obligated to pay just compensation for the taking and use of the Temporary Easements for two years. The amounts recommended as awards of just compensation are in satisfaction of all claims of damage asserted or which could have been asserted by all the defendants with regard to specific tracts in this matter, caused by the imposition and use of the Temporary Easements by Midship on January 20, 2023.

### Discussion and Determinations.

In this case, Defendants-landowners, who carry the burden of proof with regard to just compensation, chose not to appear for the hearings, and not to cross-examine Midship's expert. Midship provided evidence in the form of an expert witness's testimony and in the form of documents, plats, and drawings offered and admitted by the Commission. Midship's expert witness Mr. Walker Kelly ("Kelly"), an Oklahoma-licensed real estate appraiser.

6

Mr. Kelly testified as to his educational and professional background, that he held a real estate appraiser license in Oklahoma and that he complied with the requirements to maintain his status a licensed real estate appraiser in Oklahoma at all the times relevant to these proceedings. Mr. Kelly testified that he complied with all the requirements and standards of the real estate profession in relation to conducting his appraisals and to his opinions and testimony regarding just compensation for the Temporary Easements. The Commission found Mr. Kelly to be qualified to testify as an expert appraisal witness on the issues of appraising real estate and just compensation for the taking of the Temporary Easements in this case.

Mr. Kelly testified that he previously appraised these properties in 2019, and updated his appraisals or, for some tracts, appraised anew each property described in the Fifth Amended Complaint. He further testified regarding his methodology in performing such appraisals, and his conclusions regarding the just compensation for Midship's taking of the Temporary Easements for two years beginning January 20, 2023. Mr. Kelly testified that his appraisals and his conclusions and opinions as to just compensation complied with the Uniform Standards of Professional Appraisal Practice and the instructions given by this Court.

The documents reviewed by Mr. Kelly, and offered by Midship and admitted by the Commission as exhibits during the hearings include (i) the terms of the Temporary Easements taken as described in the Fifth Amended Complaint for Condemnation, (ii) depictions and descriptions of the Temporary Easements condemned across each of the

7

tracts, (iv) appraisals and, or memorandum addendums to appraisals of each of the properties, including the market values of the entire subject tracts, per acre and in total, and the amount of just compensation due for the Temporary Easements for two year period of their use by Midship.

The Commission outlines below the evidence presented, admitted and received as to the fair market value of the Temporary Easements on each property in question on January 20, 2023. Federal law allows evidence of the highest and best use of the land to be considered in establishing the market value of the land at the date of taking. *See Olson v. United States*, 292 U.S. 246, 255 (1934). The existing use of the land at the time of the taking is presumed to be the highest and best use. *U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 341 (6h Cir. 1993). Mr. Kelly testified that he personally physically observed all the tracts at issue in this case. Mr. Kelly further testified that he used a well-established four-prong test -- legally permissible, physically possible, financially feasible and capable of producing the highest net return -- to determine the highest and best use for each tract. The Commission found that the use of this method was proper.

Mr. Kelly further testified that, out of three traditional real estate valuation methods, he used the sales comparisons approach, because the cost and income, and capitalization approaches were not applicable to the valuations of the Temporary Easements. Having performed a highest and best use analysis of the subject properties before Midship's taking on the same, he developed market value opinions of the subject tracts utilizing comparable land sales for each of the tracts. Mr. Kelly further analyzed

the parts acquired (i.e., the Temporary Easements sought across each of the tracts), and the fair market values of the remainders of each of the subject tracts immediately after the date of take. Having considered the highest and best use of the subject tracts immediately before and after the date of take, Mr. Kelly determined the fair market values of the whole tracts, the parts taken, and damages, if any, to the remainders of each of the tracts as a result of the imposition of the Temporary Easements. The Commission found and hereby reaffirms that Mr. Kelly's methodology was proper and well-supported. The details of Mr. Mr. Kelly's analysis related to specific properties are outlined below.

Mr. Kelly testified that, with respect to the use and valuation of the Temporary Easements on all tracts, he utilized a land rental value of 10% per annum of the fee simple fair market to arrive at his determination of just compensation for Midship's ability to use the Temporary Easements for two years. The Commission found that the methodology used by Mr. Kelly is sound, appropriate and complies with the Court's instructions as to determination of just compensation for the taking of the Temporary Easements for two years.

Expert's testimony under oath as to methodology of the appraisals, and Midship's Common Exhibits 1 through 3, which were introduced and admitted during his testimony with regard to Tract No. BR-0860.000, his testimony regarding the corresponding tracts given during the Commission hearings held September 6 - 9, 2022, were reincorporated into Mr. Kelly's testimony and readmitted during the hearing on each tract, for which the hearings were held in this case on March 24-25, 2025.

Agreeing with Mr. Kelly's testimony the Commission found that the indicated values for the Temporary Easements were inclusive of value of all crops, trees and vegetation on the Temporary Easements.

The above-described testimony and evidence apply to all the tracts discussed in this Report, unless otherwise noted regarding a specific property. The Commission makes the following specific findings regarding the specific tracts and now recommends as follows.

**Tract BR-0860.000**

***Named Defendants-landowners: Larry Hughes and Jerry Hughes.***

Without objections tract-specific exhibits 1-1, 1-2and 1-2A were admitted in addition to the exhibits common to all the tracts. Mr. Kelly's testimony given during the Commission hearings on September 6-9, 2022, was incorporated by reference. The subject tract is currently a mixture of pastureland. It has some draws on the property as well as some wooded acreage. The total size of the tract is 411.25 acres, and the Temporary Easements on this tract comprise total of 2.893 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational uses. Mr. Kelly used four comparable sales that took place between January 2021 and April 2022. Utilizing the sales comparison approach and having made qualitative adjustments to his four (4) comparable sales ranging in value from $3,000.00

10

to $4,500.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $4,000.00, with the value of the whole subject tract before taking being $1,645,000.00, and after the taking remaining 1,645,000.00. Mr. Kelly's 2019 valuation was$2,500.00/acre.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $2,314.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract BR-0860.000 to be persuasive and recommends an award of **$2,314.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

### Tract No. BR-0903.000

*Named Defendants-landowners: Kasidy Niegal Lester and Daniel Floyd Miller.*

Without objections tract-specific exhibits 2-1 and 2-2 were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and the testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

11

Mr. Kelly testified that the subject tract is located along East County Road 2000, just southwest of Caddo in Bryan County and is currently used for agricultural and recreational uses. The total size of the tract is 52.62 acres, and the Temporary Easements, including the temporary access road, on this tract comprise total of 2.812 acres. The temporary access road easement is utilizing an existing on the property road.

Mr. Kelly further testified that, using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational use. Mr. Kelly utilized the sales comparison approach. He used sales of comparable properties that took place between May of 2021 and August of 2022. Having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,800.00 to $5,214.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $5,000.00, with the value of the whole subject tract before taking being $263,100.00 and after the taking remaining $263,100.00. Mr. Kelly testified that he assigned lower value to his two comparable sales of larger tracts.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $2,812.00.

12

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract BR-0903.000 to be persuasive and recommends an award of **$2,812.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

### Tract No. BR-0903.500

#### *Named Defendants-landowners: Tanner Blane Richardson.*

Without objections tract-specific exhibits 3-1 and 3-2 were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and the testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference. The subject tract located along the south side of E. 2000 Rd. located off of Miller Road, approximately 2.5 miles southwest of Caddo, Bryan County, Oklahoma, being mostly pastureland with some scattered tree coverage, is currently used as agricultural and recreational property. The total size of the tract is 54.41 acres, and the Temporary Easements on this tract comprise total of 0.03 acres, a 25-foot-wide strip, a very small footprint in comparison to other tracts.

Mr. Kelly  testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and

13

recreational uses. Mr. Kelly further testified that he used five (5) sales of similar properties that took place between May of 2021 and August of 2022 as comparable. Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,800.00 to $5,214.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $4,500.00, with the value of the whole subject tract before taking being $244,845.00 and after the taking remaining $244,845.00.

Mr. Kelly testified that his lower per acre value on this tract compared to the adjoining tract was due to the lack of frontage in the fee strip. Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $27.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract BR-0903.500 to be persuasive and recommends an award of **$27.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

## Tract No. BR-0904.000

***Named Defendants-landowners: Kalan Craig Richardson.***

Without objections tract-specific exhibits 4-1 and 4-2 were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and the testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tract is located along the south side of Road 2000, about 2 miles southwest of Caddo East County. The composition of the property is primarily hay and agricultural land, two ponds - one in the central portion of the property and another one on the southern portion of the property. The tract has some hardwood trees scattered through the southwestern corner of the property. The total size of the tract is 54.41 acres, and the Temporary Easements on this tract comprise total of 1.394 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational use. Mr. Kelly testified that he used five (5) sales of similar properties that occurred between May of 2021 and August of 2022 as comparable sales on this tract. Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,800.00 to $5,214.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $5,000,

with the value of the whole subject tract before taking being $272,050.00 and after the taking remaining $272,050.00.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $1,394.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract BR-0904.000 to be persuasive and recommends an award of **$1,394.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

### Tract No. BR-0905.000

*Named Defendants-landowners: Torrey McGraw Lester and Tera Michelle Lester.*

Without objections tract-specific exhibits 5-1 and 5-2 were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000, and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The property consists of 54.4 acres of land located along the south side of East County Road 2000 and along the west side of US-75. It is mostly open hay land with

16

some improved pasture towards the southern portion of the property. There are two stock tanks, one being a larger tank on the northeast corner of the property, and a smaller tank on the pastureland portion of the property near the western boundary. The total size of the tract is 54.4 acres, and the Temporary Easements on this tract comprise total of 1.668 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational use. He further testified that he used sales of similar properties that occurred between May of 2021 and August of 2022 to determine the market value of the subject tract. Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,800.00 to $5,214.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $5,000.00, with the value of the whole subject tract before taking being $ 272,000.00 and after the taking remaining $ 272,000.00.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $1,668.00. Mr. Kelly testified that he did not assign any damages for a "hanging" piece of the property in the south because it was a

large area that could be used for agriculture, and also, because it was for a temporary
workspace easement, and access would be available to that area during remediation.

The Commission finds the evidence presented with regard to determination of just
compensation for the taking of the Temporary Easements across Tract BR-0905.000 to be
persuasive and recommends an award of **$1,668.00** as total just compensation for the taking
of said Temporary Easements, with no diminution due with respect to the remaining
property.

<u>**Tracts No. BR-0907.000 and BR-0909.000**</u>

*Named Defendants-landowners: Billy Miller.*

Without objections tract-specific exhibits 6-1, 6-2 and 6-2A were admitted in
addition to the exhibits common to all tracts.  Mr. Kelly's testimony regarding his
methodology of appraisal and materials he used to appraise the subject tract at issue in
this case given during the hearings on tract BR-0860.000 and his testimony given during
the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tracts are located along the southeast side of U.S.75, approximately
2.2 miles southwest of Caddo, Bryan County, Oklahoma, and are currently used for
agriculture.  The total size of the tract is 146.28 acres,  and the Temporary Easements on
this tract comprise total of 3.956 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally
permissible, physically possible, financially feasible and maximally productive, he
concluded that the highest and best use for the subject tract is for agricultural and

18

recreational use. He further testified that he used four (4) sale of similar properties that took place between May of 2021 and August of 2022 to determine the market value of the subject property. Utilizing the sales comparison approach and having made qualitative adjustments to his four (4) comparable sales ranging in value from $3,800.00 to $5,216.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $4,750.00, with the value of the whole subject tract before taking being $694,830.00 and after the taking remaining $694,830.00. Mr. Kelly testified that this valuation reflected 75 to 80 per cent increase in land value compared to previous valuation. His 2019 value was $2,700.00/acre. Responding to the Commissioners' questions Mr. Kelly testified that he did not consider the improvements on the north end of the property because the Temporary Easements affected only land.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $3,758.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tracts BR-0907.000 and BR-0909.000 to be persuasive and recommends an award of $3,758.00 as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

19

**Tracts No. BR-0994.000, BR-0995.000 and BR-0996.000**

*Named Defendants-landowners: Henderson G. Anderson and Sherron Katherine Anderson, Co-Trustees of the Anderson Family Revocable Trust under written agreement dated January 21, 2009.*

Without objections tract-specific exhibits 7-1, 72 and 7-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tracts located along the south side of E. County Road 2078, approximately 225 feet west of Sulphur Springs Road, Bryan County, Oklahoma, are currently used for agricultural and recreational uses. The total size of the tract is 360 acres, and the Temporary Easements on this tract comprise total of 6.796 acres. These 6.796 acres include all Temporary Easements previously condemned in this case and temporary workspace previously condemned in the state court.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational uses. He used four (4) sales of similar properties that took place between September 2021 and April 2022 for his determination of the market value of the subject property. Utilizing the sales comparison approach and having made qualitative adjustments to his four (4) comparable sales ranging in size from 210 to 521 acres and

in value from $2,750.00 to $3,800.00 per acre, Mr. Kelly, analyzing the three tracts at issue as one unit based on common ownership, common use and contiguity, concluded that the indicated market value per acre of the subject tract was $3,500.00 with the value of the whole subject tract before taking being $756,000.00 and after the taking remaining $756,000.00.  Mr. Kelly's valuation reflects the increase in land values compared to previous valuation of approximately 70 per cent with his 2019 valuation being $2,100.00.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $4,757.00.  Responding to the Commission's questions Mr. Kelly testified that he has accounted for the so-called "state case route" in his opinion in the hearings in 2022, but that route was a part of the case in the state court, and compensation was not included in this case to avoid duplication.  Now that the variance was granted to Midship, it was able to combine all Temporary Easements for purposes of the twenty-four months extension in one case, and his opinion of just compensation includes both the "federal case route" and the "state case route."

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tracts BR-0994.000, BR-0995.000 and BR-0996.000 to be persuasive and recommends an award of **$4,757.00** as

21

total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

**<u>Tracts No. BR-1000.000 and BR-1001.000</u>**

***Named Defendants-landowners: Nolen G. Grounds and Jackie M. Grounds, et al.***

Without objections tract-specific exhibits 8-1, 8-2 and 8-2A were admitted in addition to the exhibits common to all tracts.   Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tract is currently used for agricultural, recreational uses and houses a manufactured home and barn and shed structures.   Mr. Kelly testified that the improvements are removed from the acquisition and have not been valued as part of his appraisal.  The total size of the tracts is 45.7 acres, and the Temporary Easements on this tract comprise total of 0.858 acres.

Mr. Kelly further testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for continued agricultural and recreational uses.  He used five (5) sales of similar properties that took place between February 2022 and September 2022 for his determination of the market value of the subject property.  Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,717.00

22

to $5,250.00 per acre that occurred between February of 2022 and September of 2022,

Mr. Kelly concluded that the indicated market value per acre of the subject tract was

$4,750.00, with the value of the whole subject tract before taking being $ 217,075 –

showing an increase in value from previous appraisal of $2,700.00/acre - and remaining

after the taking $ 217,075.00.  He valued the tracts together because of the Unity Rule.

Responding to the Commission, Mr. Kelly testified that he did not analyze

splitting the tracts into 10- and 30-acre units to look at increased valuation because of

the Unity Rule; moreover, he has a 20-acre comparable sale and did not think that using

a 10-acre sale would really increase the valuation.  He testified that his current valuation

is at the top of the range of the comparable sales, and did not think reducing the sizes of

the relative units would significantly increase that valuation.  Mr. Kelly further testified

that a significant portion of the property is in a flood zone.

Based on the fair market value per acre of the whole tract immediately before and

after the taking, the rights being acquired and size with respect to the Temporary

Easements across the tract and utilizing a 10% rental rate of return for a two-year period

of time, Mr. Kelly determined and concluded that just compensation for the Temporary

Easements for two years on this tract was $815.00.

The Commission finds the evidence presented with regard to determination of just

compensation for the taking of the Temporary Easements across Tracts BR-1000.000 and

BR-1001.000 to be persuasive and recommends an award of **$815.00** as total just

compensation for the taking of said Temporary Easements, with no diminution due with

respect to the remaining property.

### Tract No. BR-1002.000

*Named Defendants-landowners: The William T. Cooley and Frances L. Cooley Survivors Trust, Frances L. Cooley Trustee; Billy Gene Risner; Franklin James Risner; David Alan Risner; Michelle Berdahl; Charleen Hunter; the Unknown Heirs of Franklin Delano Risener; the Unknown Heirs of Jack Wesley Risener; the Unknown Heirs of George Gunter Risener; the Unknown Heirs of Billie Gene Risener, et al.*

Without objections tract-specific exhibits 9-1, 9-2 and 9-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference. The subject tract located at the southwest corner of E. County Road 2083and N. County Road 3920, Bryan County, Oklahoma, is currently used for agricultural and recreational uses. The total size of the tract is approximately 100 acres, and the Temporary Easements on this tract comprise total of 3.53 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational uses. He used five (5) sales of similar properties that took place between September 2021 and July of 2022 for his determination of the market value of the subject property. Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,300.00 to $5,000.00

24

per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $4,500.00, with the value of the whole subject tract before taking being $450,000.00, an increase from the preceding appraisal of $2,400.00/acre, and after the taking remaining $450,000.00.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $3,177.00.

Responding to the Commission's questions, Mr. Kelly testified that the rental rate is a market-based approach where an appraiser is trying to identify what a typical market participant would pay to rent similar types of land. In the majority of these cases, it's agricultural and recreational land, so one would be looking at what land capitalization rates are.  typically for ag rec land, they're below 8 to 10% in terms of capital rates.  The land rental rate of 10% is based on a short-term use of the property.  The rate of 10% is a little higher than the market rate is for agricultural properties, the true agricultural rate would be around 1%.  Mr. Kelly further testified that he initially determines the value of the whole property and then applies it to the Temporary Easements, he does not use Temporary Easements as a stand-alone economic unit, the temporary easement doesn't define the whole property.  There would not be a market for the rental of a 40-foot strip of land across a driveway.  Determining the value of the whole property allows him to

25

value the Temporary Easements. He did not calculate any rental rates other than 10%. He applied the same rate to Temporary Easements whether it was for a 20-foot-wide road or across the pasture, damages or costs to cure have been accounted for when the permanent easements were appraised in conjunctions with the remainder.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract BR-1002.000 to be persuasive and recommends an award of **$3,177.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

## Tract No. CR-0499.000

### Named Defendants-landowners: The Unknown Heirs of Clara R. Pettis (Pettus), deceased, The Unknown Heirs of Buel Pettus, Sr., deceased, et al.

Without objections tract-specific exhibits 10-1, 10-2 and 10-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tracts BR-0860.000 and BR-1002.000, and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tract located along the east side of E. County Road 1750, approximately 2,650 feet north of Cargo Road, Carter County, Oklahoma is currently unimproved and used for agriculture and recreation, has some oilfield encumbrances. The total size of the tract is 40 acres, and the Temporary Easements, including a temporary

26

access road, on this tract comprise total of 3.062 acres. Mr. Kelly testified that Midship used an already-existing roadway as its temporary access road, not a newly-built road.

Mr. Kelly testified that he used five (5) sales of similar properties that took place between December 2020 and March of 2022 for his determination of the market value of the subject property. He further testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational use. Mr. Kelly testified that in 2019 he appraised this property at $1,800.00/acre.

Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales located within 3-5 miles from the subject tract, burdened by oilfield encumbrances, which ranged in value from $2,408.00 to $3,500.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract now was $3,000.00, with the value of the whole subject tract before taking being $120,000.00 and after the taking remaining $120,000.00.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $1,838.00.

27

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract CR-0499.000 to be persuasive and recommends an award of **$1,838.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

**Tract No. CR-0626.000**

*Named Defendants-landowners: Larry D. Smith and Barbara J. Smith.*

Without objections tract-specific exhibits 11-1, 11-2 and 11-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and BR-1002.000, and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tract located along the south side of Telephone Road, approximately 1.0 mile east of Horse Apple Road, Carter County, Oklahoma, is used for agricultural and recreational uses and was improved with a single-family residence, multiple barn/shed structures, and related site improvements as of the effective date of the appraisal. These improvements were removed from the acquisition area and were not valued as part of this appraisal. The total size of the tract is 45.21 acres, and the Temporary Easements on this tract comprise total of 1.375 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational uses. He used five (5) sales of similar properties that took place in January – July of 2022 for his determination of the market value of the subject property. He further testified that utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $4,175.00 to $7,357.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $7,000.00, with the value of the whole subject tract before taking being $316,470.00 and after the taking remaining $316,470.00. In the underlying appraisal, the property was valued at $4,200.00/acre. The Commission considered the adjustments made to comparable sales and found them appropriate.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $1,925.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract CR-0626.000 to be persuasive and recommends an award of **$1,925.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining

29

property.

### Tracts No. CR-0627.000, CR-0628.000 and CR-0629.000

#### *Named Defendants-landowners: Casey B. Smith and Kristy J. Smith.*

Without objections tract-specific exhibits 12-1, 12-2 and 12-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tracts BR-0860.000 and BR-1002.000, and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tracts located along the south side of Telephone Road, approximately 1.1 mile east of Horse Apple Road, Carter County, Oklahoma are currently used for agricultural and recreational uses. The property is improved with two (2) single-family residences, multiple barn/shed structures, and related site improvements. Which improvements are removed from the acquisition and were not valued as part of this appraisal. The total size of the tract is 127.27 acres, and the Temporary Easements on these tracts comprise total of 2.3 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for agricultural and recreational use. He appraised the tracts under the Unit Rule due to the commonality of ownership, use and contiguity.

30

Mr. Kelly further testified that he used five (5) sales of similar properties that occurred between June of 2021 and July of 2022 for his analysis. Utilizing the sales comparison approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $3,824.00 to $7,357.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $5,500.00, with the value of the whole subject tract before taking being $699,985.00, and after the taking remaining $699,985.00. That valuation reflects land values increases from the previously appraised $3,600.00/acre. Mr. Kelly found that the subject property was inferior to Comparable Sale 2 due to the latter's size and location along State Hwy53 allowing for more exposure than the subject tracts. Mr. Kelly further testified that the lower valuation for these tracts in comparison to tract CR-0626.000 is based on the sizes of the tracts. Mr. Kelly testified that he found the larger parcels in that area have a sizeable amount of size regression – the larger parcels bringing less per acre. Mr. Kelly further testified that he did not account for the improvements, like septic or barns on the property, as they are not affected by the Temporary Easements.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on these tracts was $ 2,530.00.

31

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tracts CR-0627.000, CR-0628.000 and CR-0629.000 to be persuasive and recommends an award of $2,530.00 as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

### Tract No. JO-0753.000

#### *Named Defendants-landowners: Raymond A. Hulsey; Ranada D. Hulsey.*

Without objections tract-specific exhibits 13-1, 13-2 and 13-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tracts BR-0860.000 and BR-1002.000 and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference.

The subject tract is located along the east side of Rock Creek Road, approximately 1.8 miles northeast of Ravia, Johnston County, Oklahoma. The total size of the tract is 15 acres, and the Temporary Easements on this tract comprise total of 0.388 acres.

Mr. Kelly further testified that he used five (5) sales of similar properties that occurred between September of 2021 and October of 2022 for his valuation. Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract is for Rural Residential Use. Utilizing the sales comparison

approach and having made qualitative adjustments to his five (5) comparable sales ranging in value from $6,052.00 to $10,313.00 per acre, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $10,000.00, with the value of the whole subject tract before taking being $150,000.00 and after the taking remaining $150,000.00. That valuation falls towards the highest end of the range. Mr. Kelly relied in significant part upon Comparable Sale 1 in his determination of the market value. It is along the east side of Rock Creek Road as is the subject property and its highest and best use similarly is for rural residential use. Mr. Kelly's 2019 appraisal of the subject property was $3,500/acre.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $776.00. Responding to the Commission's questions Mr. Kelly testified that the tract is burdened with two pipelines. He applied the same 10% rental rate, as it is similar to agricultural rates as he does not see many rentals of 15-acre rural residential properties. In a large city a rental rate would be well below 10%. He afforded more weight to Sale 1 than to Sale 3 because it was closer in time to the valuation.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract JO-0753.000 to be

persuasive and recommends an award of **$776.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

### Tract No. JO-0819.000

#### *Named Defendants-landowners: Ralph D. Ragan.*

Without objections tract-specific exhibits 14-1, 14-2 and 14-2A were admitted in addition to the exhibits common to all tracts. Mr. Kelly's testimony regarding his methodology of appraisal and materials he used to appraise the subject tract at issue in this case given during the hearings on tract BR-0860.000 and his testimony given during the Commission hearings on September 6-9, 2022, were incorporated by reference. The irregular-shaped subject tract is located along the south side of State Highway 78, approximately 3,980 feet west of S. Willard Rd. in Johnston County, Oklahoma. The tract is improved with a mobile home as of the effective date of the appraisal; however, this improvement was removed from the acquisition area and was not valued for this appraisal. Two pipelines cross the tract. The total size of the tract is 39.28 acres, and the Temporary Easements on this tract total 1.238 acres.

Mr. Kelly testified that using a four-prong highest and best use test of legally permissible, physically possible, financially feasible and maximally productive, he concluded that the highest and best use for the subject tract remains for agricultural and recreational use. Mr. Kelly further testified that he used four (4) sales of similar properties that occurred between September 2021 and October of 2022 for his valuation.

34

Mr. Kelly used the sales comparison approach and used four (4) comparable sales ranging in value from $6,125.00 to $10,313.00 per acre. Having made qualitative adjustments to his four comparable sales, Mr. Kelly concluded that the indicated market value per acre of the subject tract was $7,000.00, with the value of the whole subject tract before taking being $274,960.00 and after the taking remaining $274,960.00. Mr. Kelly afforded a higher value compared to most of his comparable sales due to the size that could allow for rural residential use. Mr. Kelly's 2019 valuation was $3,000/acre.

Based on the fair market value per acre of the whole tract immediately before and after the taking, the rights being acquired and size with respect to the Temporary Easements across the tract and utilizing a 10% rental rate of return for a two-year period of time, Mr. Kelly determined and concluded that just compensation for the Temporary Easements for two years on this tract was $1,734.00.

The Commission finds the evidence presented with regard to determination of just compensation for the taking of the Temporary Easements across Tract JO-0819.000 to be persuasive and recommends an award of **$1,734.00** as total just compensation for the taking of said Temporary Easements, with no diminution due with respect to the remaining property.

## CONCLUSION

Having weighed all of the testimonial and documentary evidence, the Commission **recommends** that the Court awards to the landowners on the corresponding tracts the amounts of just compensation with respect to the Temporary Easements across each of

35

the subject tracts as set forth in the Table A above, proportionally to each owner's share of ownership share in the subject tracts, and that same be paid from the funds deposited by Midship with the Court Clerk on January 20, 2023, pursuant to this Court's Order of January 18, 2023.

All aspects of this Report and Recommendations are unanimous.

Dated this 10th day of July, 2025.

Respectfully submitted,

_____
Chris Jones, Esq., Commission Chair